**CONNECTICUT CITIZENS ACTION GROUP (CCAG) and William Bloss on behalf of themselves and all CCAG members**

v.

**TOWN OF SOUTHINGTON, Connecticut; Joseph Sollack, Chief of Police of said Town; and R. Patrick McGinley, Assistant State's Attorney for the Judicial District of Hartford at Bristol, Geographical Area No. 17.**

Civ. No. H–80–513.

United States District Court, D. Connecticut.

Oct. 24, 1980.

---

Catherine G. Roraback, Roraback, Warner & Conklin, Canaan, Conn., for plaintiffs.

Richard M. Krezel, Plainville, Conn., for defendant.

## RULING ON MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF

CLARIE, Chief Judge.

Connecticut Citizens Action Group (CCAG) and William Bloss, the director of the organization's canvassing activities, have brought this action for declaratory and injunctive relief, alleging that the Town of Southington's ordinance regulating the licensing of solicitors and canvassers violates their constitutional right to freedom of speech, press, assembly, as well as the right of petition guaranteed to them by the First and Fourteenth Amendments to the United States Constitution. The Court finds that the ordinance in question, both on its face and as applied to CCAG and Bloss, is unconstitutional because it is unduly intrusive on the plaintiffs' right of free speech. Accordingly the plaintiffs' motion for declaratory relief and for a per-

manent injunction enjoining enforcement of the contested provisions of the ordinance is granted.

*Facts*

CCAG is a non-profit organization of Connecticut citizens dedicated to the advocacy of consumer, energy, environmental, and neighborhood issues in the legislative and administrative branches of state government. It has chapters in several local communities around the state. Its canvassing staff travels door-to-door, gathering signatures on petitions, providing information to householders, and seeking operating funds for CCAG. It serves as a liaison between the people and state legislators and officials at various administrative agencies. It presents the petitions for which its canvassers have gathered signatures at legislative committee hearings, ratemaking hearings, and similar administration proceedings. The co-plaintiff is the director of CCAG's canvassing activities.

In the fall of 1979, the Town of Southington amended its ordinance concerning the licensing of peddlers and solicitors in order to "regulate the hours and methods of charitable solicitors.[1]" Section 10(b) of said amended ordinance exempts "civic organizations" such as CCAG from all of the provisions of that ordinance, except § 3(b), 7(a), and 7(b), provided the organization and/or its solicitors and canvassers register with the police prior to soliciting and pay the nominal registration fee, which for good cause may be waived. It is only the time restraints imposed by § 3(b) that are at issue in this case. This Section provides:

"Such licensees, with or without vehicles, shall be licensed to do business only between the hours of eight o'clock A.M. and six o'clock P.M., provided that, ice cream vendors may operate between 8:00 A.M. and 10:00 P.M. from June 1 to September 15th of each year and must refrain from using bells, horns, or any other device to attract attention after 8:00 P.M. (Amended July 22, 1968)."

---

1. See "An Ordinance Amending the Ordinance Concerning the Licensing of Peddler [sic] and Solicitors and Providing Penalties for the Viola-

tion Thereof in the Town of Southington" annexed to the complaint as Exhibit A.

Prior to the adoption of these amendments to the ordinance, CCAG regularly conducted door-to-door solicitation in Southington after 6:00 p. m. However, shortly after the ordinance was amended, CCAG applied for an exemption from the time limits set by § 3(b) and was refused. Both parties agreed and stipulated that § 3(b) does apply to CCAG and to the co-plaintiff so that they are directly affected and prohibited from soliciting by personal contact in the Town of Southington after 6:00 p. m.

### Jurisdiction

The plaintiffs have alleged that their constitutional rights to freedom of speech, press, assembly, and petition have been abridged in violation of 42 U.S.C. § 1983 by reason of the hourly restrictions upon solicitation, which, they allege, unduly intrudes upon their right of free speech. This Court has jurisdiction over the action pursuant to the provisions of 28 U.S.C. §§ 1343(3) and (4).

### Discussion of Law

Unquestionably, the type of political speech in which CCAG engages is at the core of the freedom of speech interests protected by the First Amendment. *See New York Times v. Sullivan*, 376 U.S. 254, 269–275, 84 S.Ct. 710, 720–723, 11 L.Ed.2d 686 (1964); *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966); *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 776–77, 98 S.Ct. 1407, 1415–16, 55 L.Ed.2d 707 (1978). Nor can there be any question, but that door-to-door canvassing and solicitation is an acceptable manner of communicating a political message. *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 628–32, 100 S.Ct. 826, 831–34, 63 L.Ed.2d 73 (1980). It is equally well established that door-to-door solicitation for the purpose of communicating a political message is not exempt from at least some forms of regulation. *See Hynes v. Mayor of Oradell*, 425 U.S. 610, 616–620, 96 S.Ct. 1755, 1758–1760, 48 L.Ed.2d 243 (1976).

Both parties agree to the propositions just articulated. They also agree on the standard by which the constitutionality of regulations of the kind at issue here are to be tested; *i. e.*, both agree that the regulations must be narrowly drawn to protect a legitimate community interest, and that the regulating must be done in such a manner as not to intrude unduly upon First Amendment rights. The parties disagree over the application of that standard to the regulation at issue in this case.

The Town of Southington argues that the ordinance protects two legitimate community interests, namely, crime prevention and the peaceful enjoyment of one's home, free of undue annoyance. The Town also contends that § 3(b) as presently drawn is neither vague nor overbroad; nor does it vest discretion in any local official to determine which messages town residents may hear and which they may not. Therefore, the Town concludes, the ordinance meets the "narrow specificity" requirement of *Hynes v. Mayor of Oradell, supra*, at 620, 96 S.Ct. at 1760.

The plaintiffs acknowledge that the prevention of crime and annoyance are legitimate community interests, but claim that these interests may be fully protected by less intrusive regulations. The fundamental claim is, however, that the prohibition on canvassing and soliciting after 6:00 p. m. impermissibly circumscribes the plaintiffs' exercise of their First Amendment rights. They rely on the exemption of ice cream vendors from the 6:00 p. m. time limit (they can ply their route until 10:00 p. m. on summer nights) as evidence of the unreasonableness of that restriction when applied to CCAG's activities.

Southington's defense of its ordinance is fatally defective in that it would, if accepted, justify almost any arbitrary time limitation on door-to-door solicitation short of a total ban. Furthermore, Southington fails adequately to explain away CCAG's claim that the ban on soliciting after 6:00 p. m. deprives it of the hours most advantageous for its purposes. It is common knowledge that most working people are employed out-

side the home during the working day until about 6:00 p. m. The hours after six o'clock would encompass the normal evening hours during which prospective household occupants would normally be available to be solicited or canvassed.[2] The precedents governing this matter require a much more careful regard for First Amendment rights, than that shown by Southington's overly restrictive ordinance.

Earlier this year the United States Supreme Court said of an ordinance that trenched upon First Amendment rights, "The Village may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Village of Schaumburg v. Citizens for a Better Environment, supra,* 444 U.S. at 637, 100 S.Ct. at 836. And in *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the Supreme Court said:

"Statutes affecting constitutional rights must be drawn with 'precision,' *NAACP v. Button,* 371 U.S. 415, 438 [83 S.Ct. 328, 340, 9 L.Ed.2d 405] (1963); *United States v. Robel,* 389 U.S. 258, 265 [88 S.Ct. 419, 424, 19 L.Ed.2d 508] (1967), and must be 'tailored' to serve their legitimate objectives. *Shapiro v. Thompson, supra,* [394 U.S. 618] at 631 [89 S.Ct. 1322 at 1329, 22 L.Ed.2d 600]. And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.' *Shelton v. Tucker,* 364 U.S. 479, 488 [81 S.Ct. 247, 252, 5 L.Ed.2d 231] (1960)." 405 U.S. at 343, 92 S.Ct. at 1003.

Surely, less restrictive hours than those employed by the Town would suffice to protect the interests put forward in defense of its ordinance. In *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), the Supreme Court had before it an ordinance prohibiting door-to-door solicitation at any time. The City of Struthers defended the ordinance on the same grounds as Southington uses here; viz., crime prevention and the protection of householders from annoyance. The Supreme Court found these grounds to be inadequate as a justification for the limits on First Amendment rights imposed by the ordinance. It said that a licensing system could be used to control the dangers posed by criminals masquerading as door-to-door canvassers, and it suggested that towns could protect their citizens from annoyance by punishing "those who call at a home in defiance of the previously expressed will of the occupant." 319 U.S. at 148, 63 S.Ct. at 866. Justice Black, speaking for the Supreme Court, went on to state:

"... as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking popular support, while the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people.

"Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the

---

**2.** The Town relies on *Westfall v. Clayton County,* 477 F.Supp. 862 (N.D.Ga.1979), in defense of the time restraints imposed by its ordinance. While the facts of *Westfall* are similar to those of the instant case, the Court finds the reasoning in *Westfall* to be unpersuasive. In *Westfall* the court said that since solicitation could be conducted door-to-door on weekends or in pub-lic places in the evening, the prohibition on door-to-door solicitation after 6:00 p. m. imposed by the ordinance in question was reasonable given the community's interest in the prevention of crime and of disturbance of the home. *Westfall, supra,* at 865, 871–72. No authority was cited in support of this conclusion.

Constitution, the naked restriction of the dissemination of ideas." 319 U.S. at 146–47, 63 S.Ct. at 865. (Footnote omitted).

In this case, Southington is free to pursue its legitimate interests in preventing crime and minimizing annoyance, but it must do so through a less restrictive time prohibition. It will require the more "narrowly drawn regulations" that the Supreme Court has so recently said are required in this area. *Village of Schaumburg v. Citizens for a Better Environment, supra,* 444 U.S. at 637, 100 S.Ct. at 836.

The nondiscriminatory nature of the ordinance in question will not save it. In *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), the Supreme Court struck down an ordinance that required anyone selling door-to-door to pay a substantial license fee. In response to the argument that the ordinance ought to be upheld because it was nondiscriminatory, the Court said:

"The fact that the ordinance is 'nondiscriminatory' is immaterial. The protection afforded by the First Amendment is not so restricted. A license tax certainly does not acquire constitutional validity because it classifies the privileges protected by the First Amendment along with the wares and merchandise of the hucksters and peddlers and treats them all alike. Such equality in treatment does not save the ordinance. Freedom of press, freedom of speech, freedom of religion are in a preferred position. 319 U.S. at 115, 63 S.Ct. at 876.

Finally, the exemption of ice cream vendors. from the full force of the ordinance in no way saves the ordinance from constitutional challenge. Commercial solicitation has traditionally been accorded less protection than has political or religious solicitation. *See Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); *Pittsburgh Press Co. v. Human Relations Comm'n.*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); *but see Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96

S.Ct. 1817, 48 L.Ed.2d 346 (1976), and *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). In this case, however, the Town treats one form of commercial speech *less restrictively* than it treats any form of political speech. This practice not only conflicts with the preferred position given political speech . in First Amendment analysis, it also reveals that the 6:00 p. m. time limit that the Town imposes on CCAG is not necessary to the interests that the Town seeks to further by that limit.

The Court finds that the challenged ordinance, as amended, on its face and as applied to the plaintiffs abridges the plaintiffs' rights to freedom of expression and speech and press in violation of the First and Fourteenth Amendments to the Constitution. Accordingly, the defendant is enjoined from enforcing said ordinance in such manner as unduly to limit the plaintiffs in the exercise of their rights to freedom of speech, press and expression.

SO ORDERED.