**PENNSYLVANIA PUBLIC INTEREST COALITION, Plaintiff,**

v.

**YORK TOWNSHIP, Defendant.**

Civ. A. No. 83–0859.

United States District Court, M.D. Pennsylvania.

Aug. 15, 1983.

David Rudovsky, David Kairys, Kairys, Rudovsky & Maguigan, Philadelphia, Pa., for plaintiff.

Raymond L. Hovis, Stock & Leader, York, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

This lawsuit has been brought by the Pennsylvania Public Interest Coalition (PENN–PIC) to determine the constitutionality of York Township's ordinance # 75–5. That ordinance, enacted in 1975 and apparently unchallenged until now, provides for the licensing of persons, firms or corporations engaged in the "transient retail business" in the township.[1] The ordinance goes on to impose various regulations on the transient retail business:

(a) There shall be no calls made from within the Township by telephone or by physical presence upon a premises except Monday through Saturday between the hours of 9:00 a.m. and 6:00 p.m., prevailing time.

(b) Any person calling by appearing upon a premises shall carry a license upon his person and shall exhibit such license, upon request, to all police officers, Township officials, or citizens occupying said premises.

(c) There shall be no business transacted which shall concern any goods, wares, or merchandise other than those specified in the application for license or which shall consist of fraud, cheating, or material misrepresentation.

(d) Physical presence upon a premises prominently posted with a "No Soliciting," "No Salesmen," "No Trespassing," "No Vendors," or similar sign shall be prohibited.

(e) Physical presence upon a premises for a period exceeding five (5) minutes

---

1. Business is broadly defined to include "the sale display or taking of orders by sample or otherwise of goods, wares or merchandise and such activities commonly known as huckstering, peddling, vending, soliciting, and canvassing." "Transient" refers to a period of not more than six (6) continuous weeks.

after being asked to leave by anyone in possession thereof shall be prohibited. Ordinance 75–5, § 5.

In addition, the following categories of solicitation are exempted from the ordinance:

(a) Farmers selling their own produce.

(b) The sale of goods, wares, and merchandise, donated by the owners thereof, the proceeds whereof are to be applied to any charitable or philanthropic purpose.

(c) Any manufacturer or producer in the sale of bread and bakery, products, meat and meat products, or milk and milk products.

(d) Any persons taking orders for merchandise, by sample, from dealers, or merchants or individuals or companies who pay a license or mercantile tax at their chief places of business.

(e) Insurance companies or their agents, or insurance brokers, authorized to transact business under the insurance laws of the Commonwealth of Pennsylvania.

Ordinance 75–5, § 8. The ordinance also contains a severability clause.

In November of 1982, PENN–PIC's canvass director in the Harrisburg area, W. Bradley Jones, sent a letter to York Township officials informing them of the group's intention to canvass the township as part of a community outreach and fundraising project. The letter stated that the canvass would be conducted Monday through Friday, 3:30 p.m. to 9:00 p.m. Mr. Jones was informed of the 6:00 p.m. curfew on solicitation, and was unable to obtain a waiver of the ordinance from township officials. This lawsuit followed requesting preliminary and permanent injunctive relief from the ordinance.

A hearing on the preliminary injunction was held on July 20, 1983, at which time both parties presented testimony. The issues have been thoroughly briefed, and the parties have indicated that the case is in a posture for final decision, subject to further consideration of the damage issue if appropriate.

PENN–PIC is a state wide coalition of unions, church and community groups and senior citizen organizations. Its function in the words of Mr. Jones is to "work on basic economic issues affecting consumers, legislation to stop plant closings, keep jobs in the state, closing corporate loopholes in the tax structure, stopping toxic waste dumping, keeping down utility rates, reforming the Public Utility Commission." (N.T. 5). PENN–PIC is registered in the Commonwealth as a charitable organization and is permitted to solicit funds on that basis. One of PENN–PIC's principal means of soliciting funds is through canvassing. This method is used because the organization lacks the financial resources for media or direct mail campaigns. Additionally, the canvassers have the opportunity to educate people to and involve them in PENN–PIC's concerns. (N.T. 7). The evening hours are selected for canvassing activities because, in the experience of the canvassers, people are most likely home from work and are most receptive to canvassing efforts at that time.[2] Mr. Jones testified to his belief that adherence to the time limitations imposed by the York ordinance would result in a loss of $3,000—$4,000 in contributions in the York Township. (N.T. 19). If similar ordinances were enacted and followed throughout the Commonwealth, the effect on PENN–PIC, according to Mr. Jones, would be "drastic." (N.T. 19). Apart from the time limitations imposed by the York ordinance, PENN–PIC staff have generally been willing to accommodate themselves to a variety of requirements. They have, for example, provided towns with lists of canvassers, have complied with regulations requiring them to carry photo identification and permits, and have even agreed to be fingerprinted. (N.T. 10).

---

**2.** No statistical basis for this assertion was offered, although it was represented that such statistical studies exist. (N.T. 17). *See Citizens for a Better Environment v. Village of Olympia,* 511 F.Supp. 104, 105 (N.D.Ill.1980).

Mr. Jones estimates that he himself has canvassed approximately 15,000 homes (N.T. 4), and that a significant number of people PENN–PIC desires to reach would not be available until after 6:00 p.m. (N.T. 17–18).

■ It is unquestioned that the right to solicit and canvass is protected by the First Amendment. *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). It is also undisputed that the right to canvass and solicit does not exist unconditionally, and that these activities are subject to reasonable, narrowly drawn regulations for public safety and the prevention of undue annoyance. *See Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976).[3] In *Martin v. Struthers, supra,* the Court noted the scope of concerns which may prompt regulatory ordinances:

> Ordinances of the sort now before us may be aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime. Constant callers, whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home as much as a neighborhood glue factory or railroad yard which zoning ordinances may prohibit.

319 U.S. at 144, 63 S.Ct. at 864, 87 L.Ed. at 1317. Despite the above sentiments, the Court expressed a sensitivity to the important interests protected by the First Amendment:

> While door to door distributors of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination of ideas in accordance with the best tradition of free discussion . . . .

Door to door distribution of circulars is essential to the poorly financed causes of little people.

319 U.S. at 145–146, 63 S.Ct. at 864–865, 87 L.Ed. at 1318–1319. The Court appreciated that an analysis of the validity of any ordinance restricting free speech involves a careful weighing of all circumstances and an appraisal of the substantiality of the reasons for the regulation. *Id.* at 144, 63 S.Ct. at 863, 87 L.Ed. at 1317 *quoting Schneider v. Irvington,* 308 U.S. 147, 161, 60 S.Ct. 146, 150, 84 L.Ed. 155, 164 (1939).

■ Because the ordinance in question impinges on the exercise of free speech, it is presumptively unconstitutional. *See Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1, 5–6 (1971). York Township must show that the ordinance is drawn narrowly and specifically to relate to legitimate public interests and that it does not unduly intrude upon the rights of free speech. *Hynes v. Mayor of Oradell,* 425 U.S. 610, 616, 620, 96 S.Ct. 1755, 1758, 1760, 48 L.Ed.2d 243, 251, 253 (1976); *Citizens for a Better Environment v. Village of Olympia,* 511 F.Supp. 104, 106 (N.D.Ill.1980).

Defendant has cited the recent Supreme Court case of *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), as a principal authority for the constitutionality of its ordinance. Also cited is the subsequent case of *Association of Community Organizations for Reform Now (ACORN) v. City of Frontenac,* 541 F.Supp. 765 (E.D.Mo. 1982) in which a district court upheld the validity of an ordinance similar to the one

---

**3.** It is also true that charitable appeals for funds enjoy a First Amendment status preferable to that of commercial solicitations. *Schaumburg, supra,* 444 U.S. at 631–632, 100 S.Ct. at 833, 63 L.Ed.2d at 84. In that case, the Court observed of solicitation in general and charitable solicitation in particular that

> solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more

than solicitors for money. Furthermore, because charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech.

444 U.S. at 632, 100 S.Ct. at 834, 63 L.Ed.2d at 84–85. In a footnote, the Court went on to explain that, although commercial speech is not excluded from First Amendment protection, regulation of commercial speech is less susceptible to attack on grounds of overbreadth. *Id.* at footnote 7.

before us. We do not agree that *Heffron* requires us to approve the York ordinance, nor do we agree with the *ACORN* decision, which we are not required to follow. In *Heffron,* the Court analyzed Minnesota State Fair rule 6.05 which required all persons desiring to sell, exhibit or distribute materials during the annual State Fair to do so only from fixed locations (i.e. licensed stalls). The International Society for Krishna Consciousness, Inc., (ISKCON) sought to enjoin the enforcement of the rule, arguing that it interfered with its practice of Sanskirtan, a religious ritual which requires its members to go into public places to distribute or sell religious literature and solicit donations for the Krishna religion. The Supreme Court upheld the validity of the rule, finding that it was not based on the content of the speech in issue and that it was tailored to address a significant state interest maintaining order and avoiding congestion at the fair. Specifically, the Court examined the conditions at the fair, the great numbers of people who congregate in a comparatively restricted area, and concluded that "The flow of the crowd and demands of safety are more pressing in the context of the Fair. As such, any comparisons to public streets are necessarily inexact." 452 U.S. at 651, 101 S.Ct. at 2566, 69 L.Ed. at 309. Given this unique setting, the Court found that the restriction was justified in preventing the serious disorder which would result in its absence.

■ Because of the somewhat unusual factual situation of *Heffron,* we believe it has a rather narrow applicability. It may be true that grounds other than the prevention of crime justify restrictions on the exercise of public speech, but it is clear from *Heffron,* and from all other Supreme Court cases decided on this issue, that courts must examine the circumstances surrounding the restrictions carefully, to determine whether they are justified. In this regard, we find the cases of *Citizens for a Better Environment v. Village of Olympia, (CBE),* 511 F.Supp. 104 (N.D.Ill.1980) and *Connecticut Citizens Action Group (CCAG) v. Town of Southington,* 508 F.Supp. 43 (D.Conn.1980) both well reasoned and instructive. The courts in both cases invalidated ordinances

strikingly similar to the one before us. In *CCAG,* for example, an ordinance proscribed solicitation after 6:00 p.m., but permitted transient ice cream vendors to operate until 10:00 p.m. during the summer months. The court found that the ordinance was invalid because it treated one form of commercial speech less restrictively than others and because the time limits were overly broad and unduly restrictive:

> In this case, Southington is free to pursue its legitimate interests in preventing crime and minimizing annoyance, but it must do so through a less restrictive time prohibition. It will require the more "narrowly drawn regulations" that the Supreme Court has so recently said are required in this area. *Village of Schaumberg v. Citizens for a Better Environment, supra,* 444 U.S. at 637, 100 S.Ct. at 836.

508 F.Supp. at 47. Similarly, in *CBE* the court invalidated ordinances which basically restricted solicitation to the daylight hours. Pertinent to the case at bar, the court stated:

> Defendant's public annoyance justification for their ordinances' time restrictions demands little discussion. To support the restrictions on this ground is to derogate the First Amendment rights of plaintiffs and those of defendants' residents who would be willing recipients of plaintiffs' message during the evening hours to the nuisance concerns of those of their residents who would not be willing listeners during those hours, when the wishes of both groups can be easily accommodated.

511 F.Supp. at 107.

■ In our opinion, York's ordinance is unconstitutional as drafted. Although prevention of crime had been alluded to as a reason for enacting the ordinance, no evidence to support this concern was offered at the hearing. Accordingly, we are left with public annoyance as the sole justification for the ordinance. Apparently, a number of residents and residents' associations had complained to the township commissioners of experiencing annoying episodes with solicitors or peddlers. Some residents

sought merely the license and permit requirement embodied in the ordinance (N.T. 34), while others sought total restriction (N.T. 47). The evidence of such complaints was extremely vague (especially as to the more drastic restrictions) and does not in any case support the overly broad and unduly restrictive time limitations.[4] It is common knowledge that a large percentage of the working population in most communities will not be home until after 5:00 p.m. By banning solicitation during the evening hours, the township has effectively eliminated access to that segment of the population. The problem with this blanket proscription is that it forecloses both willing speakers and willing listeners in an effort to accommodate those unwilling listeners who have complained. This is far too high a price to pay to insure the undisturbed peace of the individual home, when less restrictive and equally effective alternatives are available. The annoyance rationale may justify a prohibition against late night or early morning solicitation, but the assertion of potential annoyance, as here without more, will not support a blanket ban on solicitation at other times. This is not to suggest that the township does not have the means at its disposal to protect those individual residents who indicate they do not wish to be disturbed after 6:00 p.m., or, indeed, at any time.[5] In *Martin v. Struthers, supra,* the Court, speaking through Mr. Justice Black, made a number of suggestions including:

> a form of regulation ... which would make it an offense for any person to ring the bell of a householder who has appropriately indicated that he is unwilling to be disturbed. This or any similar regulation leaves the decision as to whether distributers of literature may lawfully call at a home where it belongs—with the homeowner himself. A city can punish those who call at a home in defiance of the previously expressed will of the occupant and, in addition, can by identification devices control the abuse of the privilege by criminals posing as canvassers. In any case, the problem must be worked out by each community for itself with due respect for the constitutional rights of those desiring to distribute literature and those desiring to receive it, as well as those who choose to exclude such distributers from the home.[6]

319 U.S. at 148–149, 63 S.Ct. at 865–866, 87 L.Ed. at 1319–1320.

In accordance with the foregoing discussion, we find the hourly restrictions contained in the York ordinance number 75–5 unconstitutional and will enjoin their enforcement.[7] We realize that our decision will result in a complete lack of time restrictions, at least until a new ordinance is enacted. All efforts to compromise on this issue were, however, firmly resisted by the York Township Commissioners, thus making this ruling necessary. We regret that this unwillingness to seek solutions to the serious questions presented by plaintiff will subject defendant's constituents to more, rather than less, potential for the invasion of their privacy.

---

4. This rationale is also belied by the various exceptions to the ordinance which include farmers, dairies, bakeries, and others. Presumedly, it is no more annoying to decline to purchase produce from a travelling farmer than it is to decline to make a contribution to a travelling canvasser. Further, the exceptions are content oriented, and express a preference of lesser regulation for certain forms of commercial speech which is constitutionally unacceptable. *See Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed. 346 (1976).

5. The ordinance already contains language to this effect at section 5(d) quoted on page 1400 of this opinion.

6. The Court of Appeals for this Circuit has similarly suggested the appropriateness of placing at least some of the costs of the freedom of speech on the potential listener. *See Ad World, Inc. v. Township of Doylestown,* 672 F.2d 1136, 1141 (3d Cir.) *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 850 (1982).

7. We do not address or invalidate the licensing or other requirements of ordinance 75.5, since the ordinance does contain a severability clause and since we understand from the pleadings that only the time restrictions are directly challenged *in this case.* If the ordinance is to be redrafted, however, it might be prudent for the Commissioners to consider the effect of our comments in footnote (4), supra, on any licensing requirements.