MASSACHUSETTS FAIR SHARE, INC.,
and Herbert Regan, Plaintiffs,

v.

TOWN OF ROCKLAND, et
al., Defendants.

Civ. A. No. 81–3325–N.

United States District Court,
D. Massachusetts.

May 23, 1985.

Marc S. Seigle, Boston, Mass., for plaintiff.

Thomas F. Bowes, Plympton, Mass., for Town of Plympton.

Robert C. Bliss, North Attleboro, Mass., for Town of North Attleboro.

Paul M. Lynch, Asst. Town Counsel, Marblehead, Mass., for Town of Marblehead.

Donald J. Scutiere, Town Counsel, Salem, Mass., for Town of Boxford.

David G. Nagle, Jr., Hanover, Mass., for Town of Hanover.

Philip H. Macchi, Norwood, Mass., Leonard Kopelman, Kopelman & Paige, Boston, Mass., for Town of Walpole.

Thomas P. Crotty, New Bedford, Mass., for Town of Marion.

Ashod N. Amirian, Town Counsel, Haverhill, Mass., for Town of Merrimac.

John H. Flood, Boston, Mass., for Town of Avon.

S. Peter Gorshel, Peabody, Mass., for Town of Lynnfield.

William G. Evans, Evans & Evans, Topsfield, Mass., for Town of Topsfield.

Paul L. Kenny, Town Counsel, Danvers, Mass., for Town of Danvers.

Michael O'Brien, (Town of Salem) Salem, Mass., for Town of Salem (City of Salem).

John J. Vasapolli, Law Office of Usher A. Moren, Lynn, Mass., for Town of Saugus.

A. Stanley Littlefield, Rockland, Mass., for Town of Avon.

David Lee Turner, Boston, Mass., for Town of Rockport.

F. Joseph Geogan, Rockland, Mass., for Town of Rockland.

Richard J. White, Shirley, Mass., for Town of Rockland.

John A. Vitale, Hanson, Mass., for Town of Hanson.

MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This is an action brought by Massachusetts Fair Share, Inc. ("MFS") and its president, Herbert Regan, against eighteen towns in Massachusetts pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief for alleged violations of plaintiffs' first amendment rights. Specifically, the plaintiffs assert that each defendant town has an ordinance or bylaw regulating door-to-door solicitation that prohibits or restricts MFS's ability to petition or communicate with citizens of the town and to solicit donations. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(3).

MFS is a Massachusetts non-profit corporation organized for the purpose of promoting "social welfare and the elimination of poverty by seeking and establishing solutions to the common problems of poor and lower income people in Massachusetts," Complaint ¶ 4, and so registered with the Massachusetts Attorney Generals Division of Public Charities pursuant to Massachusetts law. Mass.Gen. Laws Ann. ch. 68, § 19 (West 1980). MFS's canvassing staff distributes literature, circulates petitions, and solicits financial contributions throughout the state. Complaint ¶ 6. The plaintiffs allege that their canvassers are entitled to an opportunity to educate the public on and involve them in the activities of MFS. The plaintiffs further allege that the majority of MFS's income is received from door-to-door solicitations. Complaint ¶ 9. In order to carry out these aims, the plaintiffs seek to conduct canvassing between the hours of 6:00 p.m. and 9:00 p.m. on weekdays. Plaintiffs also maintain that these hours are the most effective periods for solicitation, in support of which they provide affidavits and statistical evidence. The primary issue before this court is whether the ordinances and bylaws of each defendant town or city, which the plaintiffs allege restrict their ability to canvass, are unconstitutional on their face, or unconstitutional as applied.

The plaintiffs' original motion for summary judgment against all eighteen defendants was summarily denied on December 22, 1983.[1] This court now reconsiders sua sponte the motion for summary judgment as against sixteen defendants, the plaintiffs having voluntarily dismissed the towns of Nahant and Merrimac. I now agree with the parties that this matter is appropriate for summary judgment, as the submissions disclose no disputed issue of fact that is both genuine and material.[2] *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

DISCUSSION

The alleged constitutional violations fall under four categories: (1) the denial to MFS of a permit to solicit or canvass; (2) the restriction of all soliciting to certain hours; (3) the prohibition of any soliciting after "sunset" or "daylight"; and (4) the restriction of solicitations for goods and services to certain daylight hours. The court will discuss each of these in turn after analyzing the general legal standards applicable in cases of solicitation and canvassing.

■ It is well established that canvassing and solicitation in residential neighborhoods are within the protections of the first amendment. *See Village of Schaumburg*

---

1. The defendant towns named in the plaintiffs' complaint are: Avon, Boxford, Danvers, Hanover, Hanson, Lynnfield, Marblehead, Marion, Merrimac, Nahant, North Attleboro, Plympton, Rockland, Rockport, Salem, Saugus, Topsfield, and Walpole.

2. Thirteen defendants have responded to plaintiffs' summary judgment motion with memoranda in opposition and cross-motions for summary judgment. The defendant towns of Avon, Danvers, and Salem failed to oppose or otherwise respond to the plaintiffs' motion for summary judgment or this court's order requiring such responses. Notice was given pursuant to Fed.R.Civ.P. 55(a) and a default order was issued as to these three towns on April 30, 1984. The court, however, nonetheless here considers and decides the substance of the claims against these defaulted defendants.

*v. Citizens for a Better Environment,* 444 U.S. 620, 629, 100 S.Ct. 826, 832, 63 L.Ed.2d 73 (1980); *Association of Community Organizations for Reform Now (ACORN) v. City of Frontenac,* 714 F.2d 813, 816 (8th Cir.1983); *Citizens for a Better Environment v. Village of Olympia Fields,* 511 F.Supp. 104, 105 (N.D.Ill.1980). The Supreme Court has long protected speech even though it be in the form of a solicitation for money. *See Bates v. State Bar of Arizona,* 433 U.S. 350, 363, 97 S.Ct. 2691, 2698, 53 L.Ed.2d 810 (1977); *New York Times v. Sullivan,* 376 U.S. 254, 269–70, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964); *Cantwell v. Connecticut,* 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940).

▮ Although duly enacted provisions normally enjoy a presumption of constitutionality, where there is a question of improper infringement of the exercise of first amendment rights, the statute's proponents bears the burden of establishing the statute's constitutionality. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *ACORN v. City of Frontenac,* 714 F.2d at 817; *Citizens for a Better Environment v. Village of Schaumburg,* 590 F.2d 220, 224 (7th Cir.1978), *aff'd.,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Citizens for a Better Environment v. Village of Olympia Fields,* 511 F.Supp. at 106.

▮ It is clear, however, that the right to canvass or solicit is not unconditional, but subject to regulation if the regulation does not intrude upon the rights of free speech. *E.g., Hynes v. Mayor of Oradell,* 425 U.S. 610, 616–17, 96 S.Ct. 1755, 1758–59, 48 L.Ed.2d 243 (1976). But such regulation must be narrowly drawn so that town officials do not have the broad discretionary power to determine what messages residents will hear. *Id.* at 617, 96 S.Ct. at 1759. The regulation must be undertaken:

    [W]ith due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money. Furthermore, because charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech.

*Village of Schaumburg,* 444 U.S. at 632, 100 S.Ct. at 833.

▮ Therefore, the validity of a regulation that infringes upon the exercise of first amendment freedoms will be sustained only if the regulation is (1) narrowly drawn to further a legitimate government objective, (2) unrelated to the restriction of communication, and (3) not unduly restrictive of first amendment rights. *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 658, 101 S.Ct. 2559, 2569, 69 L.Ed.2d 298 (1981); *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981); *Village of Schaumberg,* 444 U.S. at 637, 100 S.Ct. at 836; *Cantwell v. Connecticut,* 310 U.S. at 306, 60 S.Ct. at 904.

The Supreme Court has recognized the importance of canvassing in the areas of political campaigns and public matters, particularly in the discussion of sensitive and controversial issues. *See Hynes v. Mayor of Oradell,* 425 U.S. at 625, 96 S.Ct. at 1763 (Brennan, J., concurring). In *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), Justice Black, writing for the Court, set the benchmark against which first amendment restrictions must be measured:

    While door to door distributers of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination of ideas in accordance with the best tradition of free discussion. The widespread use of this method of communication by many groups espous-

ing various causes attests [to] its major importance. Pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people ... Of course, as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of popular support, while the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people.

Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas.

*Id.* at 145–46, 63 S.Ct. at 864–65.

### I. *Denial of a Permit*

The court first turns to the plaintiffs' claims against the defendants Avon, Hanson, and Rockland who denied MFS's requests for a permit to conduct door-to-door solicitation at anytime. The town of Avon denied MFS a permit to solicit or canvass pursuant to Avon, Mass., Code, art. IX § 2. The town of Hanson refused to grant the plaintiffs a permit based on a policy adopted by the Board of Selectmen, effective March 9, 1976, restricting house-to-house solicitation within the town to members of local non-profit organizations. Similarly the Board of Selectmen of the town of Rockland denied MFS's request to solicit on the grounds that they had restricted

solicitation in the town to only local organizations.

The Supreme Court has recognized that a town may validly protect its citizenry from fraud and disruption of the peaceful enjoyment of their homes, but has held invalid such regulations when they unreasonably obstructed the collection of funds. *See Cantwell v. Connecticut,* 310 U.S. at 296, 60 S.Ct. 296. In *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), the Supreme Court held unconstitutional an ordinance that dealt specifically with solicitors and canvassers. The ordinance required them to obtain a permit from the Chief of Police, which he would not issue if he decided that "the canvasser is not of good character or is canvassing for a project not free from fraud." *Id.* at 158, 60 S.Ct. at 149. Similarly, the Supreme Court held that a city ordinance requiring an identification permit for canvassing or soliciting from house to house for charitable or political purposes was unconstitutionally vague. *See Hynes v. Mayor of Oradell,* 425 U.S. at 610, 96 S.Ct. at 1755. These strict standards are used in the first amendment area because of the possibility that protected speech and activities may be inhibited by overly broad statutes. *See Hynes v. Mayor of Oradell,* 425 U.S. at 620, 96 S.Ct. at 1760; *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959).

The Town of Rockland ordinance must therefore fall because it fails to conform to the constitutional requirement of sufficiently narrow specificity. *See* Rockland, Mass., Ordinance, art. XIV § 2A (1980). First, the ordinance does not sufficiently specify what those within its reach must do in order to comply. As in *Schneider,* the Rockland ordinance requires that a canvasser must obtain a permit from the Chief of Police and in order to obtain such permit, must submit "satisfactory evidence of his honesty and moral character and satisfactory proof of his identity." But the applicant is not told what must be set forth as "satisfactory" evidence of his character, or what the po-

lice will consider sufficient identification. *Id.* Nor does the ordinance provide a statutory deadline for municipal action upon a permit application which is an essential feature of a permit system. *Id. Cf. A Quaker Action Group v. Morton,* 516 F.2d 717, 735 (D.C.Cir.1975). Thus, the failure to explain what identification and evidence of "moral character" is required gives the police the effective power to grant or deny permission to canvass for specific political or charitable causes. The ordinance suffers in its practical application from the vice condemned by principles long established in Supreme Court cases. *See, e.g., Hynes v. Mayor of Oradell,* 425 U.S. at 622, 96 S.Ct. at 1761, *citing Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958).

■ Similarly, the Avon ordinance must fall because it also fails to meet these constitutional standards. In pertinent part, the ordinance requires all persons who solicit funds regardless of their purpose to obtain a permit from the Board of Selectmen "under such terms and conditions as the Board may prescribe." Avon, Mass., Code, art. IX § 2. The applicant is not told what information is necessary to obtain a permit nor is there a deadline for action by the Board of Selectmen on the application. In fact, the Board of Selectmen are given broad power to set such "terms and conditions" as they deem fit for each applicant. This ordinance thus allows the Avon Board of Selectmen to grant or deny permits or issue limited permits depending on the applicant's political or charitable beliefs— clearly unconstitutional on its face.

■ Finally, in the case of the town of Hanson, the Board of Selectmen denied MFS a permit to canvass or solicit pursuant to a policy effective March 9, 1976, restricting house-to-house solicitations within the town to members of local non-profit organizations, although the town of Hanson provides an exemption to its prohibition of solicitation to local non-profit orgnizations. The town argues that this policy was adopted to prevent house-breaks and public annoyance because the town residents are reluctant to have strangers coming to their door. The evidence, however, does not support the overly broad and restrictive canvass and solicitation rule. There is no evidence that solicitors or canvassers from outside Hanson are more likely to commit housebreaks. Moreover, it is no more annoying to decline to contribute to a local non-profit organization than it is to decline to make a contribution to a traveling canvasser.

The town further argues that there is no constitutional violation because no actual bylaw exists which prohibits solicitation within the town. The analysis, however, cannot stop here. Local governmental bodies can be sued directly under 42 U.S.C. § 1983 where an alleged official policy or custom deprives an individual of his constitutional rights even though such policy or custom has not received formal approval through local government's official decision-making channels. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The town of Hanson's prohibition is just such a policy because it deprives organizations who are located outside the city limits from conducting any canvassing or solicitation in Hanson. Clearly, such a blanket prohibition restricts the flow of information and ideas and cannot be constitutionally sustained. *See Citizens for a Better Environment v. City of Park Ridge,* 567 F.2d 689 (7th Cir.1975).

In view of the above, the court finds that the defendants' ordinances insofar as they do not establish reasonable guidelines and deadlines for municipal action with respect to permit applications and insofar as defendants' ordinances prohibit door-to-door solication by the plaintiffs, the defendants' ordinances are void on their face and as applied to plaintiffs.

## II. *Restriction of Solicitation to Certain Hours*

The court next turns to plaintiffs' challenge to time restrictions on door-to-door solicitation. The towns of Rockport and

Walpole restrict solicitation and canvassing to the hours of 8:00 a.m. to 6:00 p.m. and 9:00 a.m. to 5:00 p.m., respectively. The town of Saugus allows canvassing between the hours of 3:00 p.m. to 6:00 p.m. on weekday evenings, but does not allow the solicitation of donations. The town of Hanover granted the plaintiffs permission to canvass during the hours of 9:30 a.m. 12:00 p.m. and 1:30 p.m. to 5:00 p.m. The town of North Attleboro allowed the plaintiffs to canvass between the hours of 3:30 p.m. and 8:30 p.m. on weekday evenings only. The town of Marion prohibits solicitation after 5:00 p.m. except by prior appointment with the resident. The city of Salem prohibits solicitation after 5:00 p.m. These above-named defendants contend that the interest of crime prevention and public annoyance are furthered by the time restrictions. In this regard, the court finds the cases of *Pennsylvania Public Interest Coalition (PPIC) v. York Township*, 569 F.Supp. 1398 (M.D.Penn.1983); *Citizens for A Better Environment v. Village of Olympia Fields*, 511 F.Supp. 104; *Connecticut Citizens Action Group (CCAG) v. Town of Southington*, 508 F.Supp. 43 (D.Conn. 1980); *ACORN v. City of Frontenac*, 714 F.2d 813 (8th Cir.1983); and *New York Community Action Network, Inc. v. Town of Hempstead*, 601 F.Supp. 1066 (E.D.N.Y. 1984) instructive. In *CCAG*, the court invalidated an ordinance that prohibited canvassing and solicitation in the town after 6:00 p.m. The court noted:

It is common knowledge that most working people are employed outside the home during the working day until about 6:00 p.m. The hours after six o'clock would encompass the normal evening hours during which prospective household occupants would normally be available to be solicited or canvassed. The precedents governing this matter require a much more careful regard for First

Amendment rights, than that shown by Southington's overly restrictive ordinance.

508 F.Supp. at 45–46.

Similarly, in *PPIC v. York Township*, the court invalidated an ordinance which prohibited persons engaged in "transient retail business" from making calls by telephone or by physical presence except between the hours of 9:00 a.m. and 6:00 p.m. The plaintiff, a registered charitable organization, was informed by town officials that they would not be allowed to solicit after 6:00 p.m. The court found that there was no evidence to support the proposition that the ordinance prevented crime. The court further found that the public annoyance justification did not support the "overly broad and unduly restrictive time limitations." 569 F.Supp. at 1403. The court stated:

This is far too high a price to pay to insure the undisturbed peace of the individual home, when less restrictive and equally effective alternatives are available. The annoyance rationale may justify a prohibition against late night or early morning solicitation, but the assertion of potential annoyance, as here without more, will not support a blanket ban on solicitation at other times.

*Id.*

The Court of Appeals for the Eighth Circuit in *ACORN v. City of Frontenac* found an ordinance that prevented charitable canvassing between the hours of 6:00 p.m. and 9:00 a.m. and on Sundays and legal holidays to be unduly intrusive upon the first amendment rights of the plaintiff. In addition, the court noted that the residents were not members of a "captive audience" and that the solicitor or canvasser had no right to make an uninvited entry into a resident's home.[3] The test applied stated as follows:

---

**3.** The defendants rely on *Westfall v. Clayton County*, 477 F.Supp. 862 (N.D.Ga.1979) and *McMurdie v. Doutt*, 468 F.Supp. 766 (N.D.Ohio 1979) in defense of their time restraints. While these cases have sustained time restrictions similar to those challenged at bar, this court finds their reasoning unpersuasive. The *McMurdie*

opinion is devoid of any analysis on time restrictions. In *Westfall*, the district court relied in part upon the availability of both Saturday hours for door-to-door solicitation and public places the plaintiff could deliver their message. *Westfall, supra* at 865, 871–72. This court agrees with the district court in *Citizens for a*

Since constitutional principles require that the regulation be narrowly drawn to further the legitimate governmental objective, the proponent of the regulation must demonstrate that the government's objectives will not be served sufficiently by means less restrictive of first amendment freedoms.

714 F.2d at 816 (footnote omitted). *But see Pennsylvania Alliance for Jobs and Energy v. Council of the Borough of Munhall,* 743 F.2d 182 (3d Cir.1984) (stating that the " 'ample alternative channels of communications' standard applies, unless the regulation in question is content-based. Then the more stringent 'least restrictive alternative' standard applies.")

Similarly, in *New York Community Action Network v. Town of Hempstead,* a citizen action group challenged the constitutionality of a town ordinance which made it unlawful to canvass after one-half hour before sunset or 7:00 p.m., whichever is earlier. The court held that although the town's alleged justifications were legitimate objectives, the town had not met its burden of establishing the statute's constitutionality by demonstrating that these objectives of protecting citizens from undue annoyance and crime could not be met by less intrusive restrictions following the Eighth Circuit's test employed in *ACORN v. City of Frontenac.*

█ Although the defendants have argued that the time restrictions for door-to-door solicitation will further a legitimate governmental interest in controlling crime, the defendants have failed to establish through statistics or other data that their time restrictions will actually prevent crime. Thus, the defendants have failed to demonstrate that the government's objectives would not be served sufficiently by means less restrictive of first amendment freedoms. *See Organization for a Better Austin v. Keefe,* 402 U.S. at 419, 91 S.Ct. at 1577.

The legitimate interest in reducing crime can be better served by measures less intrusive than such overly restrictive time limitations. The defendant could, for example, employ an application and identification requirement, or the defendants could simply enforce their existing consumer fraud, trespass, burglary and other penal laws without unconstitutionally restricting the first amendment rights of the plaintiffs.

█ Similarly, the defendants' concerns with public annoyance may be accommodated without impermissibly infringing upon the first amendment rights of the plaintiffs. Local trespass laws may be enforced against solicitors who ignore a resident's no solicitation directive or remain on private property after its owner has indicated that the intruder is not welcome. Furthermore, a resident wishing to avoid solicitors may do so by simply posting a "no solicitation" or "no trespassing" sign at his door or at the entrance to his property. *See Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. at 620, 100 S.Ct. at 826; *Citizens for a Better Environment v. Village of Olympia Fields,* 511 F.Supp. at 107.

█ Some defendants in support for their position have suggested the availability of alternative modes of communication, such as the telephone and Saturday hours with respect to those defendants who allow Saturday solicitation. The fact that MFS may use other methods to contact citizens is not relevant to this first amendment challenge. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 556, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975); *Citizens for a Better Environment v. Village of Schaumburg,* 590 F.2d at 224; *Citizens for a Better Environment v. Village of Olympia Fields,* 511 F.Supp. at 106.

For the foregoing reasons, the court finds these defendants' ordinances which

*Better Environment v. Village of Olympia Fields,* 511 F.Supp. at 107–108, that the analysis in *Westfall* does not comport with the constitutional principles of free speech elucidated by the

Supreme Court. *See CCAG v. Town of Southington,* 508 F.Supp. 43 at 46 n. 2; *ACORN v. City of Frontenac,* 714 F.2d at 819 n. 10.

restrict door-to-door solicitation to certain daylight hours unconstitutional on their face and as applied to the plaintiffs.

## III. *Prohibition of Solicitation After Sunset*

■ As in the case of time restrictions, prohibitions of solicitations after sunset must be invalidated. The towns of Lynnfield and Plympton which prohibit solicitation and canvassing after "sunset" and "daylight hours" have failed to show that the governmental interest in crime prevention is furthered by restricting solicitation to these time periods. Such regulations unduly intrude upon first amendment rights. Moreover, the defendants' public annoyance justification will not support a first amendment challenge when the defendants have an ample supply of legislative weapons which are much less intrusive of plaintiffs and their residents' first amendment rights than a blanket ban on solicitation after sunset. *See Citizens for a Better Environment v. Village of Olympia*, 511 F.Supp. 104 (N.D.Ill.1980).[4]

Further, the towns have failed to define the terms "sunset" and "daylight hours." The lack of clarity with regard to these inherently ambiguous terms raises the spectre of both chilling effect and discriminatory enforcement. *See West Virginia Citizens Action Group v. Daley*, 324 S.E.2d 713, 720 (W.Va.1984) (where the court invalidated an ordinance which restricted door-to-door canvassing and solicitation to "between 9:00 a.m. and sunset.") The court concluded that the failure to define the term "sunset" in the ordinance rendered the ordinance unconstitutionally vague and that "[a] fine line drawn through dusk is too slender a thread upon which to hang the exercise of fundamental free speech rights." *Id.* at 721.

## IV. *Restriction of Solicitation of Goods and Services*

■ Finally, the Court addresses plaintiffs' challenge to defendants' ordinances with respect to persons who solicit "orders for the sale of goods, wares and merchandise." The towns of Boxford, Danvers, Marblehead and Topsfield have bylaws which regulate such solicitation for commercial purposes. Specifically, these ordinances restrict canvassers, solicitors, hawkers and peddlers from soliciting orders for the sale of goods to certain hours. *See* Boxford, Mass., Ordinance art. 9 § 1.1 (1974); Danvers, Mass., Ordinance to Regulate Hawkers and Peddlers (July 5, 1960); Topsfield, Mass., Ordinance to Regulate Hawkers and Peddlers (June 17, 1963); Marblehead, Mass., Ordinance ch. 31, § 1 (1972).

MFS, however, is a non-profit corporation which distributes literature, seeks volunteer participation, and solicits financial contributions. There is no sale or distribution of merchandise within any reasonable construction of these bylaws and therefore the court finds them inapplicable to the plaintiffs. Indeed, the towns of Boxford, Marblehead, and Topsfield represent that their bylaws only apply to those who sell or solicit the sale of merchandise and would not apply to the plaintiffs' activities as stated in the complaint. As to the last defendant Danvers, who continues to assert that its bylaws are applicable to the plaintiffs, the court finds that these bylaws which are similar in content to those of the above three defendants cannot be so applied.

Accordingly, judgment will enter for the plaintiffs as against Avon, Hanover, Hanson, Lynnfield, Marion, North Attleboro, Plympton, Rockland, Rockport, Salem, Saugus, and Walpole. In the case of Boxford, Danvers, Marblehead, and Topsfield, the court finds that the laws challenged by the plaintiffs cannot be applied to the plaintiffs' activities.

SO ORDERED.

---

**4.** The court is aware that an ordinance restricting solicitation might be necessary at some late evening hour to minimize annoyance. Such a task, however, must be accomplished through less vague time prohibitions than found in the instant case.