See also D.C., 424 F.Supp. 70.

UNITED STATES of America

v.

**Frank Parker OSBORNE.**

**Crim. No. 76–458.**

United States District Court,
E. D. Pennsylvania.

March 20, 1978.

John E. Riley, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Jeffrey M. Miller, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FOGEL, District Judge.

Defendant, Frank Parker Osborne, was indicted on September 21, 1976, in a one count indictment, charging him with possession with intent to distribute approximately 74.2 grams of heroin, a schedule I narcotic substance, in violation of 21 U.S.C. § 841(a)(1). At his non-jury trial, which commenced on July 8, 1977, defendant admitted committing the acts underlying the substantive offense with which he was charged[1], but raised the defense of entrapment. Moreover, after his trial defendant filed a motion to dismiss the indictment or, in the alternative, to re-open the record for additional testimony, asserting that an agreement existed between the informant and the Government whereby the infor-

mant would be leniently dealt with in a pending criminal prosecution in exchange for his testimony against defendant.

For the reasons set forth below, we find there was no entrapment, and further, that the existence of an agreement between the informant and the Government does not taint the evidence against defendant to such an extent as to require dismissal of the indictment, or the re-opening of the record for additional testimony.

## I. STIPULATED FACTS

In August, 1976, Detective Hildesheim of the Bristol Township Police Department received information from an informant that defendant would be involved in a heroin transaction that was to take place in the near future. On or about September 1, 1976, Detective Hildesheim told agents of the Drug Enforcement Agency (DEA) that a heroin transaction would transpire near the intersection of Cedar Drive and Paris Avenue, Bristol Township, Pennsylvania, between 9:00 a.m. and 11:00 a.m. on September 2, 1976. He also told them that Frank Osborne, a participant in the transaction, would be driving a red Chevrolet Corvair.

On the basis of this information, Detective Hildesheim and DEA agents set up surveillance near Cedar Drive and Paris Avenue. They observed defendant arrive in a red Corvair and meet an individual who was parked in an Oldsmobile along Paris Avenue. Defendant was observed standing alongside the Oldsmobile engaging in a conversation with the individual who was operating the Oldsmobile. Defendant returned to the Corvair, carrying something in his hand, and proceeded northward on U.S. Route 1.

At a point approximately five miles from the scene of the transfer, defendant's vehicle was surrounded by agents of the DEA and defendant was asked to step out of his vehicle. When he did so, DEA agent Clark

---

1. Defendant stipulated to most of the facts relating to the substantive offense with which he was charged and his subsequent apprehension (July 8, 1977, N.T. 8, 10–12, 19, 21; January 17, 1977, N.T. 47–59; November 1, 1976, N.T. 52–62). He did not, however, stipulate to any facts pertaining to the relationship between the informant and Detective Hildesheim.

noticed a foil package on the front seat. This package was seized and the contents were later analyzed and found to be approximately three ounces of 8.7% strength heroin.

## II. ENTRAPMENT

Defendant's testimony in support of the entrapment defense may be summarized as follows:

1. Defendant had never been convicted of any crime involving drugs (July 8, 1977, N.T. 58–59);

2. During the summer of 1976, defendant was in financial straits and borrowed $275.00 from the informant (July 8, 1977, N.T. 62);

3. On repeated occasions during August, 1976, the informant urged defendant to satisfy his indebtedness by working for him (July 8, 1977, N.T. 64);

4. After numerous rejections of the informant's offers, defendant finally agreed to deliver drugs from one point to another for the sum of $1,000.00 (July 8, 1977, N.T. 65);

5. The informant gave defendant the money to purchase the heroin, and instructions with respect to the place of "pick up"; defendant was also told to deliver it to the house of the informant's girlfriend (July 8, 1977, N.T. 69).

Thus, defendant claims that the informant was so intent upon having him arrested, that he was willing to invest thousands of dollars to carry out his plan. Even if as the finder of fact in this non-jury trial we found defendant's testimony to be credible, (which we do not for reasons set forth more fully below) he has failed to establish the two essential elements of the entrapment defense: (1) Government inducement and (2) lack of predisposition to commit the crime.

## A. GOVERNMENT INDUCEMENT

Entrapment exists when: (a) Government agents or those under Government control induce an otherwise innocent person to commit the crime charged; and (b) there is no predisposition on the part of that person to commit the crime. Therefore, to invoke the entrapment defense a defendant must show inducement by Government officials or agents. *United States v. Timberlake,* 559 F.2d 1375, 1378 (5th Cir. 1977); *United States v. Romano,* 278 F.2d 202, 204 (2d Cir. 1960). Construing the evidence in this case most favorably to defendant, we do not find a nexus between the Government and the informant which is sufficient to permit defendant to avail himself of this defense.

The testimony pertinent to the issue of Government involvement, viewed most favorably to defendant, discloses the following facts:

1. The informant contacted Detective Hildesheim in August, 1976, and told him of the impending drug transaction (July 8, 1977, N.T. 16–17, 33–34);

2. Detective Hildesheim talked with the informant five or six times prior to defendant's arrest (July 27, 1977, N.T. 12, 27); and

3. The informant was considered "reliable" (July 8, 1977, N.T. 16).

There is conflicting testimony with respect to the informant's motivation for disclosing the particulars of the drug transaction. Detective Hildesheim testified that the informant wanted defendant arrested because defendant was "running around" with the informant's girlfriend (July 8, 1977, N.T. 36–38); the informant testified that he wanted defendant arrested because defendant was selling drugs to teenagers (July 27, 1977, N.T. 34–35); defendant maintains he was "set up" (July 8, 1977, N.T. 63–72).

█ It is important to note that the uncontradicted testimony of both the informant and Detective Hildesheim clearly establishes that the informant neither received nor was promised any compensation, financial or otherwise, in exchange for supplying the information which lead to defendant's arrest (July 8, 1977, N.T. 23–24, 38–39, 41; July 27, 1977, N.T. 21, 42–43). Moreover, there is not a scintilla of evidence suggesting that Detective Hildesheim

or any other law enforcement official initiated contact with the informant, or urged him to uncover information which would lead to defendant's arrest. Therefore, in view of the record before us, we find that the informant's actions in this case were motivated solely by personal considerations, and not done in performance of a governmental function.

A private scheme or plan which results in an arrest is not subject to the defense of entrapment. For example, in *United States v. Mayo,* 162 U.S.App.D.C. 171, 498 F.2d 713 (1974), a young woman approached two police officers and stated that she had just been raped by two men in a nearby apartment. She further stated that one of the men had a sawed-off shotgun in his possession. At trial, appellant admitted possession of the shotgun in violation of 26 U.S.C. § 5861(d) and § 5871, but asserted that the young woman had sold him the shotgun only minutes before his apprehension; therefore, he claimed that he was entrapped. Rejecting this contention, the Court stated:

> It is fundamental that a defense based on entrapment requires the "inducement by an official. . . . The entrapment defense does not extend to inducement by a private citizen. . . ." (Citation omitted) [2]

Moreover, in *United States v. Laverick,* 348 F.2d 708 (3d Cir.) *cert. denied,* 382 U.S. 940, 86 S.Ct. 391, 15 L.Ed.2d 350 (1965), this Circuit stated:

> [It] is obvious that a private individual may only be an entrapping party when an agency relationship exists between himself and the Government.[3]

The record in this case is totally devoid of evidence of any relationship between the government and the informant that would substantiate a finding of governmental involvement. To the contrary, the record clearly demonstrates that Detective Hildesheim was merely the passive recipient of information concerning impending criminal conduct. He, in turn, passed this information on to DEA Agents who actively utilized the information to effectuate defendant's arrest. Therefore, we hold that under the facts before us, government inducement is lacking.

## B.  PREDISPOSITION

■   Even assuming, *arguendo,* that .the informant and the government were working in concert to effectuate defendant's arrest, entrapment is still not a viable defense under these facts, for merely providing the opportunity for one predisposed to criminal conduct does not constitute entrapment. *United States v. Russell,* 411 U.S. 423, 436, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

Defendant testified that he was a family man, involved in local politics, and had never before been involved in a heroin transaction (July 8, 1977, N.T. 59–62, 72). On the other hand, the informant testified that defendant was known for his involvement in drug transactions (July 27, 1977, N.T. 32), and further, that he had observed defendant participate in drug transactions during the period from 1972 to 1976 (July 27, 1977, N.T. 13–16). Although there are discrepancies between the testimony of the informant and Detective Hildesheim concerning disclosure of the information, we find that these discrepancies do not affect the informant's credibility, as to material matters we deem critical. The discrepancies concern such matters as the informant's motivation in passing on his information and whether or not the informant actually informed Detective Hildesheim of the precise time and location of the transaction; they do not bear on the credibility of the informant as it relates to defendant's predisposition.

Further support for our finding of defendant's predisposition is found in the fol-

---

**2.**  498 F.2d 716.

**3.**  348 F.2d 713.

lowing testimony of another government witness: [4]

Q. Do you know Frank Osborne?

A. Yes.

Q. For how long have you know him? When did you first meet him?

A. 1973, I guess, 1974.

\* \* \* \* \* \*

Q. Through your association with Frank Osborne did you have occasion to be involved with the distribution of drugs with him?

A. Yes.

Q. What kind of drugs?

A. Heroin.

Q. When did these transactions take place, if you can recall?

A. Late 1974, or early 1975.

Q. How were they set up? Who contacted whom?

A. Well, I don't exactly remember how they went down or anything but I would get a phone call.

Q. From whom?

A. From Frankie.

Q. How many times, approximately, did these transactions take place?

A. About three or four.

Q. Do you recall where the transactions took place?

A. At home, at my home.

Q. And where was that at the time?

\* \* \* \* \* \*

Q. In Philadelphia?

A. Yes.

Q. Can you recall generally when they occurred, any certain day of the week?

A. Mostly on Sunday; once on Saturday.

Q. How do you recall the Saturday?

A. Well, one time my [spouse] used to come over on Saturday and one time [my spouse] was there.

Q. And where did the deals generally take place inside the house?

A. Living room.

Q. And was there any specific time where it didn't go down, the transaction didn't take place in the living room?

A. Was there any specific time?

Q. Was there any time out of those four occasions when the transaction did not occur in the living room?

A. We had one time on Saturday it was in the basement.

Q. And was that because your [spouse] was present in the house?

A. Yes.

Q. Generally, if you can recall, what kind of quantities were involved in these transactions?

A. It was bundles, mostly bundles.

Q. Do you recall specifically any of the occasions, any amounts that were involved on any of the occasions?

A. Well, one time it was eight bundles, the next time it was twelve.

Q. Did you have occasion at any time to prepare those bundles in the presence of Mr. Osborne?

A. Yes.

Q. And did he take part at all in that preparation?

A. Yes, we bundled it up together.[5]

Under the teachings of *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and its progeny [6], when a defendant's predisposition to commit the crime charged is demonstrated, the defense of entrapment is unavailable. Therefore, on the facts of this case, we find that defendant was predisposed to commit the crime charged and, thus, defendant is adjudicated guilty as charged.

---

4. This witness is currently in the Federal Witness Protection Program. Therefore, the witness' identity may not be disclosed.

5. August 4, 1977, N.T. 3–7.

6. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

## III. AGREEMENT BETWEEN INFORMANT AND THE GOVERNMENT

By way of post trial motion, defendant asserts that the government failed to disclose the existence of an agreement between the United States Attorney's Office and the informant regarding preferential treatment in another pending federal prosecution for firearms violations. Moreover, he claims that nondisclosure of this fact requires dismissal of the indictment or, in the alternative, leave to re-open the record for an evidentiary hearing. In its answer to defendant's motion, the government admits that an agreement was reached with the informant in an unrelated case only hours before the informant testified on July 27, 1977, at the trial of this case. Under the agreement, the government would advise the sentencing judge in that case of the degree of the informant's cooperation in exchange for a guilty plea to several counts of an indictment charging firearms offenses.

In *United States v. McCrane,* 3 Cir., 527 F.2d 906 (1975), vacated and remanded for reconsideration in light of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), on remand, 547 F.2d 204 (3d Cir. 1976), this Circuit has held that:

> A promise of preferential treatment given to a witness by the government is admissible for impeachment purposes.[7]

Similarly, in *United States v. Harris,* 498 F.2d 1164 (3d Cir. 1974), this Circuit held that a promise of preferential treatment made to a key government witness by the United States Attorney should have been disclosed, as it affected the witness' credibility. However, these decisions and others of similar import[8] do not support dismissal of the indictment, or the need for an evidentiary hearing in the present case. They merely emphasize the need for scrutinizing the informant's testimony.

The informant's testimony against defendant was corroborated by Detective Hildesheim and another witness[9], and we find their testimony credible. Further, the informant testified in a pre-trial *in camera* hearing to substantially the same matters to which he testified at defendant's trial; this hearing took place long before the indictment of the informant on alleged firearms violations (Sealed transcript of November 3, 1976). Thus, the Court has had the opportunity to compare the informant's pre-agreement and post-agreement testimony. Because of the substantial identity of the relevant pre-agreement and post-agreement testimony, disclosure of the agreement at trial would not have affected our assessment of the informant's credibility.

Therefore, we hold that defendant's motion to dismiss the indictment or in the alternative, to re-open the record for additional testimony on the basis of non-disclosure of an agreement between the government and the informant must be denied.

An appropriate order will issue.

---

**7.** 527 F.2d at 911.

**8.** *See, e.g., Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue*

*v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

