714 F.2d 813
 ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW, a/k/a
ACORN, and Vivian Allison, Appellants,
v.
CITY OF FRONTENAC; David M. Blazer, Chief of Police, City
of Frontenac; Morgan B. Lawton, Mayor, City of Frontenac;
Francis Phelan, Alderman, City of Frontenac; Harry
Greditzer, Alderman, City of Frontenac; Marjorie R.
Harwood, Alderman, City of Frontenac; John H. Klamer,
Alderman, City of Frontenac; F. Ryan Preston, Alderman,
City of Frontenac; and A. J. Spanogle, Alderman, City of
Frontenac, Appellees.
 No. 82-1857.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1983.
Decided Aug. 16, 1983.
 
 John D. Lynn, Chackes, Hoare & Sedey, St. Louis, Mo., for appellants.
 George E. Helfers, Clayton, Mo., David D. Crane, St. Louis, Mo., for appellees.
 Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 The plaintiffs, the Association of Community Organizations for Reform Now (ACORN), et al., appeal from an adverse judgment rendered by the United States District Court for the Eastern District of Missouri. The plaintiffs sued to enjoin the enforcement of a Frontenac city ordinance which prohibits ACORN workers from engaging in residential door-to-door canvassing in Frontenac after 6:00 p.m. The district court, sitting without a jury, upheld the ordinance as a reasonable time, place, and manner regulation. Association of Community Organizations for Reform Now v. City of Frontenac, 541 F.Supp. 765, 770 (E.D.Mo.1982). Because we find the ordinance is not narrowly tailored to advance Frontenac's legitimate objectives, we hold that its application to ACORN would violate the plaintiffs' first amendment rights. Accordingly, we reverse the judgment of the district court and direct entry of judgment in favor of the plaintiffs.
 
 
 2
 ACORN is a nonprofit organization operating in Missouri, among other states. ACORN's purpose, as stated in its charter, is "to advance the interests of low and moderate income people as citizens of the United States and of their respective communities and states, in every area of their interest and concern." According to its brief, "ACORN seeks to mobilize significant numbers of people to influence private and public decision-makers with respect to issues of common concern to its members." In order to organize citizens into neighborhood groups, ACORN employees engage in residential door-to-door canvassing, normally on weekdays from 4:00 p.m. to 9:00 p.m. Residents are asked to support ACORN by signing a petition, providing financial or personal volunteer support, or subscribing to ACORN's newsletters.
 
 
 3
 In March 1981, the City of Frontenac enacted Ordinance No. 638, which provides in part:
 
 
 4
 Section 2. The following practices very often become nuisances and therefore are of such public concern that they must be regulated:
 
 
 5
 a) That of going in and upon private residences by peddlers, canvassers, solicitors and transient vendors of merchandise, not having been requested or invited so to do by the owner or occupant, for the purpose of soliciting orders for the sale of goods, wares and merchandise, or for the purpose of disposing of same.
 
 
 6
 b) That of peddling, selling of goods, wares or merchandise upon public or private streets or sidewalks.
 
 
 7
 c) That of soliciting money, services or orders for the sale of goods, wares or merchandise upon public or private streets or sidewalks.
 
 
 8
 d) That of soliciting money by a bona fide nonprofit charitable organization either (1) by going in or upon private residences, not having been requested or invited so to do by the owner or occupant, or (2) upon public streets or sidewalks.
 
 
 9
 ....
 
 
 10
 Section 6. Hours of Solicitation: No person shall solicit except between the hours of 9:00 a.m. and 6:00 p.m. on each day, and no solicitation shall be done on Sundays, or legal holidays.
 
 
 11
 Frontenac, Mo., Code Ordinance No. 638, §§ 2, 6.[1] The parties have stipulated that Frontenac will enforce section 6 of the ordinance against ACORN workers who canvass during prohibited hours. As a result of the ordinance and its threatened enforcement, ACORN has suspended canvassing activities in Frontenac.
 
 
 12
 ACORN brought suit under 42 U.S.C. § 1983 (1976), claiming that Frontenac's enforcement of the ordinance deprived ACORN of its rights under the first and fourteenth amendments to the Constitution.[2] The defendants responded at trial that the ordinance was necessary to protect the security and privacy of Frontenac residents, and to lessen the possibility of burglary and other crimes.
 
 
 13
 After a trial, the district court entered judgment for the defendants and held:
 
 
 14
 The Frontenac ordinance enacted by the defendants in this cause of action appears to be a permissible accommodation of the plaintiffs' rights to solicit and the municipality's interests in protecting its citizens and preserving the peaceful enjoyment of the homes for its citizens. Westfall v. Clayton County, 477 F.Supp. 862, 865 (N.D.Ga.1979).
 
 
 15
 ACORN v. Frontenac, 541 F.Supp. at 770.
 
 
 16
 The district court reasoned that since the regulation was content neutral, that since Frontenac had a legitimate interest in protecting its citizens' privacy and safety, and that since ACORN had ample alternative opportunities to contact the public, the ordinance was a permissible time, place, and manner regulation of ACORN's exercise of its first amendment rights. Id. The plaintiffs appeal.[3]
 
 
 17
 Discussion.
 
 
 18
 ACORN's canvassing and soliciting activities clearly are protected by the first amendment, and the district court so held. ACORN v. Frontenac, 541 F.Supp. at 769. See Village of Schaumberg v. Citizens for a Better Environment, 444 U.S. 620, 629, 632-33, 100 S.Ct. 826, 832, 833-34, 63 L.Ed.2d 73 (1980). In addition, it is plain the ordinance in question directly and substantially affects ACORN's first amendment rights, since ACORN employees normally canvass from 4:00 p.m. to 9:00 p.m. on weekdays and desire to do so in Frontenac, but the ordinance prohibits canvassing after 6:00 p.m.
 
 
 19
 It is also unquestioned that Frontenac has the power to regulate the activities of canvassers and solicitors if the regulation is in furtherance of a legitimate governmental objective. E.g., Hynes v. Mayor of Oradell, 425 U.S. 610, 616-17, 96 S.Ct. 1755, 1758-59, 48 L.Ed.2d 243 (1976). However, such regulation must be undertaken
 
 
 20
 [W]ith due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money.
 
 
 21
 Village of Schaumberg, 444 U.S. at 632, 100 S.Ct. at 833.
 
 
 22
 Although the initial structuring of such a regulation is within the legislature's domain, it is the duty of the courts to determine the regulation's constitutional validity. Thomas v. Collins, 323 U.S. 516, 531-32, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945); Schneider v. State, 308 U.S. 147, 161, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939). In addition, although a duly enacted statute normally carries with it a presumption of constitutionality, when a regulation allegedly infringes on the exercise of first amendment rights, the statute's proponent bears the burden of establishing the statute's constitutionality. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); Citizens for a Better Environment v. Village of Schaumberg, 590 F.2d 220, 224 (7th Cir.1978), aff'd, 444 U.S. 620, 100 S.Ct. 826 (1980); Citizens for a Better Environment v. Village of Olympia Fields, 511 F.Supp. 104, 106 (N.D.Ill.1980).[4]
 
 
 23
 The validity of a regulation that infringes upon the exercise of first amendment freedoms will be sustained only if the regulation is narrowly drawn to further a legitimate governmental objective unrelated to the restriction of communication, and if it does not unduly intrude upon the exercise of first amendment rights. Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 658, 101 S.Ct. 2559, 2569, 69 L.Ed.2d 298 (1981) (Brennan, J., concurring and dissenting); Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981); Village of Schaumberg, 444 U.S. at 637, 100 S.Ct. at 836; Cantwell v. Connecticut, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); L. Tribe, American Constitutional Law § 12-2, at 581-82 (1978).[5]
 
 
 24
 In applying the test to this case, we recognize that the preservation of the privacy and safety of its citizens is a legitimate governmental objective for Frontenac to pursue. A municipality certainly has the power, even the duty, to regulate activities within its borders to lessen the opportunities for crime against its residents and their property. Similarly, a municipality may regulate activities in the interest of preventing undue annoyance of its residents. Hynes v. Mayor of Oradell, 425 U.S. at 616-17, 619, 96 S.Ct. at 1758-59, 1760; Kovacs v. Cooper, 336 U.S. 77, 88, 69 S.Ct. 448, 454, 93 L.Ed. 513 (1949); Citizens for a Better Environment v. Village of Olympia Fields, 511 F.Supp. at 106; Connecticut Citizens Action Group v. Town of Southington, 508 F.Supp. 43, 47 (D.Conn.1980).
 
 
 25
 Although we find that Frontenac's asserted objectives are legitimate, we hold that the regulation in issue here is not sufficiently tailored so as to avoid conflict with the plaintiffs' first amendment freedoms. Since constitutional principles require that the regulation be narrowly drawn to further the legitimate governmental objective, the proponent of the regulation must demonstrate[6] that the government's objectives will not be served sufficiently by means less restrictive of first amendment freedoms. E.g., Schad v. Borough of Mount Ephraim, 452 U.S. at 70-72, 101 S.Ct. at 2183-84; Village of Schaumberg, 444 U.S. at 637-38, 100 S.Ct. at 836; Thomas v. Collins, 323 U.S. at 539-40, 65 S.Ct. at 326-27; Martin v. City of Struthers, 319 U.S. 141, 148, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943); Schneider v. State, 308 U.S. at 164, 60 S.Ct. at 152. In this case, there is no showing that any of several less restrictive alternatives would not meet the government's objectives.
 
 
 26
 As noted above, Frontenac has a legitimate interest in protecting its residents from crime. This objective can be served satisfactorily by enforcement of the city's application and identification requirements for all canvassers, peddlers, and solicitors.[7] In addition, trespassing, fraud, burglary, or any other offense against a resident or his property may be prohibited and the violator punished under existing penal laws.
 
 
 27
 Similarly, the city may achieve its goal of preventing undue annoyance of its residents through means less restrictive of constitutional freedoms than the means embodied in this regulation. The city's trespassing laws may be enforced against those who enter or remain on private property after its owner has indicated the intruder is not welcome. Furthermore, unlike the public transit patron in Lehman v. City of Shaker Heights, 418 U.S. 298, 304, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974) (plurality opinion); id. at 307-08, 94 S.Ct. at 2719 (Douglas, J., concurring), and the unwilling target of the sound truck in Kovacs v. Cooper, 336 U.S. at 86-87, 69 S.Ct. at 453, the resident in this case is not a member of a captive audience. The solicitor or canvasser has no right to make an uninvited entry into a resident's home. Cf. Rowan v. United States Post Office Department, 397 U.S. 728, 736-38, 90 S.Ct. 1484, 1490-91, 25 L.Ed.2d 736 (1970) (householder has right to bar entry of unwanted mail into home). If the resident is not interested in receiving the particular solicitor's message, he may indicate as much and close the door. If the resident cares not to receive messages from any solicitors or canvassers, he may post a sign to that effect at his door or at the entrance to his property. But Frontenac may not, in the interest of achieving its legitimate objectives, broadly prohibit the plaintiffs' activities when less restrictive alternatives will satisfactorily accomplish the same objectives. As the Supreme Court held in NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963): "Broad prophylactic rules in the area of free expression are suspect.... Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." Id. at 438, 83 S.Ct. at 340.[8]
 
 
 28
 We are not persuaded by Frontenac's argument that the ordinance is valid since it allows ACORN and others to solicit at alternative times, namely, from 9:00 a.m. to 6:00 p.m., Monday through Saturday. Regardless of ACORN's argument that to canvass during those hours would be fruitless,[9] we note, as the Supreme Court has noted, that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." Schneider v. State, 308 U.S. at 163, 60 S.Ct. at 151. See also Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 757 n. 15, 96 S.Ct. 1817, 1823 n. 15, 48 L.Ed.2d 346 (1976); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 556, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975); Citizens for a Better Environment v. Village of Olympia Fields, 511 F.Supp. at 107-08.[10] The issue in this case deals with the validity of Frontenac's prohibition of solicitation after 6:00 p.m. on weekdays, not with the efficacy of solicitation at some other time.
 
 
 29
 The importance of first amendment values has been aptly described by Professor Meiklejohn:
 
 
 30
 The First Amendment does not protect a "freedom to speak." It protects the freedom of those activities of thought and communication by which we "govern." It is concerned, not with a private right, but with a public power, a governmental responsibility.
 
 
 31
 In the specific language of the Constitution, the governing activities of the people appear only in terms of casting a ballot. But in the deeper meaning of the Constitution, voting is merely the external expression of a wide and diverse number of activities by means of which citizens attempt to meet the responsibilities of making judgments, which that freedom to govern lays upon them. That freedom implies and requires what we call "the dignity of the individual." Self-government can exist only insofar as the voters acquire the intelligence, integrity, sensitivity, and generous devotion to the general welfare that, in theory, casting a ballot is assumed to express.
 
 
 32
 The responsibilities mentioned are of three kinds. We, the people who govern, must try to understand the issues which, incident by incident, face the nation. We must pass judgment upon the decisions which our agents make upon those issues. And, further, we must share in devising methods by which those decisions can be made wise and effective or, if need be, supplanted by others which promise greater wisdom and effectiveness. Now it is these activities, in all their diversity, whose freedom fills up "the scope of the First Amendment." These are the activities to whose freedom it gives its unqualified protection.
 
 
 33
 Meiklejohn, The First Amendment is an Absolute, 1961 Sup.Ct.Rev. 245, 255.
 
 
 34
 In this case Frontenac, in its effort to protect the security and privacy of its residents, has unduly intruded upon the rights of the plaintiffs and of Frontenac's residents[11] to engage in a free exchange of ideas on topics of social and political import; this is a right our predecessors deemed so valuable as to warrant constitutional protection.
 
 
 35
 Frontenac's ordinance unduly intrudes upon the first amendment rights of the plaintiffs; furthermore, Frontenac's objectives may be accomplished through means less restrictive of constitutional rights than the means embodied in the ordinance. Therefore, we hold Frontenac is enjoined from enforcing its ordinance to prohibit the plaintiffs from soliciting and canvassing between the hours of 6:00 p.m. and 9:00 p.m. on weekday evenings. The judgment of the district court is reversed.[12]
 
 
 
 [1]
 Prior to the enactment of Ordinance No. 638, the City of Frontenac prohibited canvassing "between the hours of one-half hour before sunset and 9:00 a.m. the following morning, or at any time on Sundays, except by specific appointment with or invitation from the prospective customer." Frontenac, Mo.Code § 7-6 (repealed March 1981). On January 27, 1981, four ACORN employees canvassed in Frontenac until about 7:00 p.m., which was after sunset. In response to citizen complaints, Frontenac police officers ordered the canvassers to leave the area because they did not possess a permit to canvass from the Frontenac City Clerk, and because they were in violation of section 7-6 of the Frontenac code. ACORN's lawsuit initially challenged the validity of section 7-6. When the ordinance was repealed in March 1981 and Ordinance No. 638 was enacted in its place, ACORN amended its complaint to contest the validity of the new ordinance
 
 
 [2]
 The ordinance could also have been challenged on grounds of overbreadth because it prohibits solicitation on public streets and sidewalks after 6:00 p.m. as well as prohibiting door-to-door solicitation. An overbreadth challenge to a similar hourly restriction was successful in Westfall v. Board of Commissioners of Clayton County, 447 F.Supp. 862, 870-71 (N.D.Ga.1979). Westfall upheld the ordinance as a reasonable restriction on door-to-door solicitation of private residences, but found the prohibition of the use of public streets to be unconstitutional. ACORN does not challenge the Frontenac ordinance on overbreadth grounds in the public forum and we do not decide whether such a challenge would be successful
 
 
 [3]
 In addition to challenging the validity of the ordinance, ACORN contends that the district court erred in its resolution of several evidentiary matters during the trial. Because we reverse the district court's judgment on the first ground, we need not reach ACORN's evidentiary challenges
 
 
 [4]
 But see Kovacs v. Cooper, 336 U.S. 77, 94-95, 69 S.Ct. 448, 457-458, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring) ("[T]he claim that any legislation is presumptively unconstitutional which touches the field of the First Amendment and the Fourteenth Amendment, insofar as the latter's concept of 'liberty' contains what is specifically protected by the First, has never commended itself to a majority of this Court.")
 
 
 [5]
 The second requirement of the test, that the regulation not unduly intrude upon the exercise of first amendment rights, makes it clear that first amendment freedoms are not to be sacrificed in the name of pursuit of a legitimate governmental objective. Instead, if possible, the regulation must be sufficiently tailored to achieve its objective so that it avoids conflict with the first amendment. See United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), in which the Court held:
 [I]t has been suggested that this case should be decided by "balancing" the governmental interests expressed in § 5(a)(1)(D) against the First Amendment rights asserted by the appellee. This we decline to do. We recognize that both interests are substantial, but we deem it inappropriate for this Court to label one as being more important or more substantial than the other. Our inquiry is more circumscribed. Faced with a clear conflict between a federal statute enacted in the interests of national security and an individual's exercise of his First Amendment rights, we have confined our analysis to whether Congress has adopted a constitutional means in achieving its concededly legitimate legislative goal. In making this determination we have found it necessary to measure the validity of the means adopted by Congress against both the goal it has sought to achieve and the specific prohibitions of the First Amendment. But we have in no way "balanced" those respective interests. We have ruled only that the Constitution requires that the conflict between congressional power and individual rights be accommodated by legislation drawn more narrowly to avoid the conflict. There is, of course, nothing novel in that analysis. Such a course of adjudication was enunciated by Chief Justice Marshall when he declared: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." McCulloch v. Maryland, 4 Wheat. 316, 421, 4 L.Ed. 579 (1819) (emphasis added).
 Id. at 268 n. 20, 88 S.Ct. at 426 n. 20.
 
 
 [6]
 See Schad v. Borough of Mount Ephraim, 452 U.S. at 74, 101 S.Ct. at 2186 (burden of proof is upon proponent to establish "that its interests could not be met by restrictions that are less intrusive on protected forms of expression")
 
 
 [7]
 Frontenac's Ordinance No. 638 provides in pertinent part:
 Section 3. Before any person or organization shall engage in any of the practices named in Section 2 hereof, they must comply with all Ordinances of the City of Frontenac, Missouri, and must also obtain from the City Clerk an identification card in accordance with the provisions of Section 4 and 5 hereof, said card to extend no longer than sixty (60) days.
 Section 4. Requirements: Any applicant engaged in any activity described in Sections 2(a), (b) and/or (c) of this Ordinance must file with the City Clerk an application in writing which sall [sic] give the following information:
 a) Name and physical description[.]
 b) Permanent and local address and, in case of itinerant merchants and transient vendors, the local address from which proposed sales will be made.
 c) A brief description of the nature of the practice.
 d) Name and address of the firm for or on whose behalf the orders are solicited, or the supplier of the goods involved.
 e) Length of time for which the permit is desired.
 f) A statement as to whether or not the applicant has been convicted of any crime, and if so, the nature of the offense and the penalty imposed.
 g) Motor vehicle make, model, year, color and registration number, if same shall be used in the proposed solicitation.
 h) Social security number.
 Section 5. Requirements: Any applicant engaged in any activity described in Section 2(d) of this Ordinance must file with the City Clerk an application in writing which shall give the following information:
 a) The name and address of the applicant.
 b) The purpose for which the solicitation is being made and the use and disposition to be made of any receipts therefrom.
 c) An outline of the methods to be used in conducting the solicitations.
 d) The length of time for which the permit is desired.
 e) The number of agents or solicitors to be used in the charitable solicitation campaign.
 f) Proof that the organization is exempt from federal income taxation.
 ....
 Section 7. Identification Card: Upon the furnishing of the information required under Sections 4 or 5 hereof, such applicant shall be issued an identification card, for which a $3.00 fee shall be required, by the City Clerk within five (5) working days after applying therefor, unless the information furnished in compliance herewith shows that the applicant has been convicted of a felony or if the investigation hereof reveals that the applicant has falsified any information required herein.
 a) All identification cards shall, upon demand, be exhibited to any police officer or other City official, and shall be displayed to any person who is being solicited.
 b) Any identification card granted hereunder may be revoked by the Municipal Court after the filing of an Information by the Prosecuting Attorney and a hearing thereon for any of the following causes:
 1) Any violation of this Ordinance.
 2) Fraud, misrepresentation or incorrect statement made in the course of carrying on the activity.
 3) Conviction of a felony.
 4) Conducting the activity in such a manner as to constitute a breach of the peace or a menace to the health, safety or general welfare of the public.
 Frontenac, Mo., Code Ordinance No. 638.
 The validity of these provisions is not challenged in this case.
 
 
 [8]
 The Court also noted in Schneider v. State: "If it is said that these [less restrictive] means are less efficient and convenient than [broad regulation of the dissemination of information], the answer is that considerations of this sort do not empower a municipality to abridge freedom of speech and press." 308 U.S. at 164, 60 S.Ct. at 152
 
 
 [9]
 ACORN argues that the most productive hours of canvassing are from 5:30 or 6:00 p.m. until 9:00 p.m. on weekday evenings, since the greatest number of people are home during those hours
 
 
 [10]
 But see Westfall v. Board of Commissioners of Clayton County, 477 F.Supp. 862, 865 (N.D.Ga.1979), in which the district court upheld an ordinance which prohibited soliciting and canvassing of private residences except between the hours of 9:00 a.m. and 6:00 p.m. The court rested its decision in part on its finding that the plaintiffs were allowed to solicit during the weekend, and that public solicitation of those away from their homes on weekdays was available to the plaintiffs. We agree with the district court in Citizens for a Better Environment v. Village of Olympia Fields, 511 F.Supp. at 107-08, that Westfall's analysis does not comport with the constitutional principles of free speech elucidated by the Supreme Court
 
 
 [11]
 "The ordinance does not control anything but the distribution of literature, and in that respect it substitutes the judgment of the community for the judgment of the individual householder." Martin v. City of Struthers, 319 U.S. at 143-44, 63 S.Ct. at 863
 
 
 [12]
 Regarding ACORN's request in its brief for an award of attorney fees incurred in this appeal, we request that the plaintiffs file an appropriate motion for attorney fees with the Clerk of the Court. See 8th Cir.R. 17. Regarding ACORN's request for attorney fees incurred in the action in the district court, we request that the plaintiffs make an appropriate filing as directed by the rules of the district court