**ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW, an Arkansas corporation, and Tom Regan, Head Organizer, Plaintiffs,**

v.

**CITY OF DEARBORN, a Municipal corporation, Defendant.**

**MICHIGAN SANE/FREEZE, a Michigan corporation, Plaintiff,**

v.

**CITY OF DEARBORN, a Municipal Corporation, Defendant.**

**MICHIGAN CITIZENS LOBBY, a Michigan corporation, Plaintiff,**

v.

**CITY OF DEARBORN, a Municipal Corporation, Defendant.**

**Nos. 88–72675, 88–72749 and 88–73502.**

United States District Court, E.D. Michigan, S.D.

Oct. 5, 1988.

Stephen R. Bachmann, Grosse Point Farms, Mich., for ACORN.

Neal Bush, Detroit, Mich., for Sane/Freeze and Mich. Citizens Lobby.

William C. Hultgren, Laurie M. Sabon, City of Dearborn, Office of the Corp. Counsel, Detroit, Mich., for defendant.

## OPINION

COHN, District Judge.

### I.

### A.

This case involves a challenge to the time-of-day solicitation restrictions contained in defendant City of Dearborn's Ordinance 88–416, entitled AN ORDINANCE TO REGULATE RELIGIOUS, POLITICAL, AND CHARITABLE SOLICITING AND CANVASSING IN THE CITY OF DEARBORN. Plaintiffs ACORN (Association of Community Organizations for Reform Now), Michigan Sane/Freeze, and Michigan Citizens Lobby, are all political organizations currently operating in Dearborn which use door-to-door canvassing as their primary method of political organizing. ACORN is a non-profit corporation whose purpose is to advance the interests of its low and moderate income member-

ship. Its members are engaged in a campaign in support of an anti-rape bill currently pending before Congress. Sane/Freeze is a national and statewide disarmament organization whose members are conducting a campaign to prevent the rail garrison basing of MX missiles in Michigan as well as garnering support for a comprehensive test ban treaty. Michigan Citizens Lobby is a statewide consumers organization active in the State Legislature, regulatory bodies, and in the courts. Its members are soliciting support for H.R. 3436, currently pending before the United States Congress, to improve the quality of health care in the United States.

On May 3, 1988, Dearborn passed Ordinance 88–416 which comprehensively regulates door-to-door solicitation for donations by political, religious, or charitable organizations. The ordinance requires all organizations wishing to solicit within Dearborn to first obtain a permit from the Police Department. Permits are issued for periods of thirty or sixty days and solicitors must display identification issued by the Police Department while soliciting. The ordinance prohibits canvassing of residences displaying "No Solicitors" signs or where a resident requests them not to do so. Section seven of the ordinance prohibits soliciting or canvassing between the hours of 7:00 a.m. and 7:00 p.m. Violations of the ordinance are punishable by ninety days imprisonment or a fine of five hundred dollars or both. Soliciting privileges may also be revoked.

On December 14, 1987, ACORN requested permission to solicit signatures and donations in support of its anti-rape campaign. The City Council granted ACORN permission to canvass from January 8, 1988 to February 28, 1988 between the hours of 4:00 p.m. to 7:00 p.m. On February 26, 1988, ACORN requested an extension of its solicitation permit from March 1, 1988 to April 30, 1988. The request was refused, presumably because ACORN refused to comply with the City's 7:00 p.m. limit on canvassing. ACORN typically canvasses between the hours of 4:00 p.m. and 9:00 p.m. On June 6, 1988, ACORN renewed its request to continue canvassing. Dearborn responded by forwarding a copy of Ordinance 88–416, which indicated that its 7:00 p.m. restriction was still in force.

### B.

ACORN filed suit in this Court under 42 U.S.C. secs. 1983 and 1988, alleging that Ordinance 88–416 violates the First and Fourteenth Amendments to the Constitution. ACORN specifically claims that Ordinance 88–416's hours restriction is facially unconstitutional, that enforcement has interfered with and chilled its exercise of its First Amendment rights, and that Dearborn's pattern of enforcement is arbitrary and capricious and denies it equal protection of law. ACORN requests that the Court grant a final judgment declaring Ordinance 88–416 unconstitutional, a permanent injunction against continued interference with its canvassing activities, fifty-thousand dollars ($50,000) in compensatory damages, and attorneys' fees and costs.

Soon after ACORN filed suit, plaintiffs Michigan Sane/Freeze and Michigan Citizens Lobby filed essentially identical suits challenging the constitutionally of the 7:00 p.m. canvassing restriction. Both organizations also canvass until 9:00 p.m. Because the three cases arise out of the same transaction and involve identical questions of law, they are on this Court's docket. *See* Local Rule 8(b).

### II.

### A.

The three plaintiffs have moved for a preliminary injunction against the continued enforcement of the 7:00 p.m. canvassing restriction. To determine whether a preliminary injunction is proper, the Court must carefully balance four separate factors. It must consider (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits, (2) whether the movant has shown an irreparable injury, (3) whether a preliminary injunction would harm third parties, and (4) whether the public interest would be served by issuing a preliminary injunction. *Frisch's Restaurant, Inc. v. Sho-*

*ney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985). Because there has been no trial on the merits and none of the parties has asked for an evidentiary hearing, this Court must decide the motion based on the affidavits in the record.

### B.

■ Plaintiffs have amply demonstrated that they will suffer irreparable harm if a preliminary injunction is not granted. These three plaintiffs organize predominantly or exclusively through door-to-door solicitation. They build support for their proposals, recruit new members, gather signatures for their petitions, disseminate their views, and collect funds in this manner. It seems clear that if plaintiffs could not canvass, they would be largely out of business. Moreover, it is evident that each organization operates on a rather tight budget and that none of them would likely survive a prolonged cut-off of their ability to solicit funds. The economic viability of canvassing operations depends largely on the ability to work at a time when most residents are home. *See* Affidavit of Richard Blakeney. The 7:00 p.m. restriction seriously threatens the livelihood of these organizations; the risk of irreparable harm is clear.

■ In addition, where First Amendment interests are threatened, irreparable injury can be presumed. The First Amendment occupies a unique place in our pantheon of freedoms, and as such is entitled to particular protection. *See Let's Help Florida v. Smathers*, 453 F.Supp. 1003, 1009 (N.D. Fla.1978), *aff'd.* 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). *See also Wolff v. Selective Service Local Board No. 16*, 372 F.2d 817, 824 (2d Cir.1967). "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

■ The balance of hardships would appear to fall more heavily on plaintiffs than Dearborn. Dearborn claims that permitting persons to canvass until 9:00 p.m. increases the risk of evening burglary and disturbs the privacy of its residents. However, a preliminary injunction would only operate until the conclusion of a trial on the merits. The burden of allowing door-to-door solicitation between 7:00 p.m. and 9:00 p.m. for a period of several months is outweighed by the financial strain likely suffered by plaintiffs if they are not able to canvass.

■ The public interest would also seem to be served by the issuance of a preliminary injunction. We place a high value on the preservation of a multitude of political organizations and associations. Indeed it is through such organizations that our pluralistic democracy properly functions. The Court has already noted the weak financial state of organizations like plaintiffs'. Considerations of the public interest suggest that plaintiffs should be permitted to continue operations pending a final decision in the case. What is left to consider is plaintiffs' probability of success on the merits.

### III.

#### A.

■ It is well established that door-to-door solicitation by political, religious, or charitable groups is protected by the First Amendment. *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 959–60, 104 S.Ct. 2839, 2848–49, 81 L.Ed.2d 786 (1984); *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632–33, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980), *reh. denied* 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980). However, a state may regulate First Amendment activities by general and nondiscriminatory time, place, and manner restrictions. *Heffron v. International Society of Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1980); *Cox v. New Hampshire*, 312 U.S. 569, 575–76, 61 S.Ct. 762, 765–66, 85 L.Ed. 1049 (1941); *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1939).

■ Time, place, and manner restrictions on First Amendment activities are

constitutional only when they are content-neutral, serve a legitimate government interest, and leave open ample alternative channels of communication. *Renton v. Playtime Theatres*, 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986); *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1983); *Heffron*, 452 U.S. at 647–48, 101 S.Ct. at 2563–64. In addition, any regulation must be narrowly tailored to promote the government's legitimate interest. *Clark v. CCNV*, 468 U.S. at 293, 104 S.Ct. at 3069; *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 808, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Schad v. Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1980); *Schaumburg v. CBE*, 444 U.S. at 637, 100 S.Ct. at 836; *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1553 (7th Cir.1986), *aff'd.* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987); *ACORN v. City of Frontenac*, 714 F.2d 813, 818 (8th Cir. 1983). Generally, when a statute is alleged to infringe on the First Amendment, the state or municipality bears the burden of demonstrating its constitutionality. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed. 2d 1 (1971); *New Jersey Citizens League v. Edison Township*, 797 F.2d 1250, 1255 (3rd Cir.1986); *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248, 1257 (7th Cir.1985); *ACORN v. City of Frontenac*, 714 F.2d 813, 817 (8th Cir.1983).

### B.

■ The Supreme Court has never specifically considered the constitutionality of time-of-day restrictions on door-to-door solicitation. Several Courts of Appeal have considered the question, and they do not speak with one voice. The Eighth Circuit in *ACORN v. City of Frontenac*, 714 F.2d 813, 817 (8th Cir.1983), held that where regulations infringe on First Amendment freedoms, the government has the burden of proving that its objectives could not be achieved by less restrictive means. *Id.* at 818. Applying this standard to time-of-day solicitation restrictions, the court said that Frontenac's legitimate interests in crime prevention and civic tranquility can

> be served satisfactorily by enforcement of the city's application and identification requirements for all canvassers, peddlers, and solicitors. In addition, trespassing, fraud, and burglary or any other offense against a resident may be prohibited and the violator punished under existing penal laws.... The City's trespassing laws may be enforced against those who enter or remain on private property after its owner has indicated that the intruder is unwelcome.

*Id.* at 818–19. It should be noted that in reaching this result, the court of appeals overturned the district court's factual finding that the ordinance was a reasonable time, place, and manner restriction.

The Third Circuit has rejected the *Frontenac* "less restrictive alternative" standard in favor of a more generous approach. In *Pennsylvania Alliance for Jobs and Energy v. Council of the Borough of Munhall*, 743 F.2d 182 (3d Cir. 1984), the court held that "time, place, and manner restrictions are reasonable if they are imposed 'without reference to the content of the regulated speech, ... serve a significant governmental interest, and ... leave open ample alternative channels of communication....'" *Id.* at 185, *citing Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 648, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). Affirming a district court's entry of summary judgment for defendants, the court of appeals found that the existence of unrestricted canvassing periods, parks, shopping districts, and the availability of telephone and mail solicitations were sufficient to uphold the ordinances. Circuit Judge Becker's dissent, citing several authoritative studies, argued that practical alternatives to evening canvassing did not exist. *Id.* at 193–95. Moreover, Judge Becker noted that the factual record did not support the municipalities' asserted anti-crime rationale. *Id.* at 190–91.

A subsequent decision of the Third Circuit calls into question that court's continued adherence to the "ample alternative

channels of communication" standard. In *New Jersey Citizen Action v. Edison,* 797 F.2d 1250 (3d Cir.1986), *cert. denied* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 186 (1987), a different panel of the Third Circuit considered virtually identical time-of-day restrictions as were involved in *PAJE,* and concluded that they were unconstitutional. The *New Jersey Citizen Action* court said it was applying the same standard set out in *PAJE, New Jersey Citizen Action* at 1255, and attempted to distinguish the two cases on the basis of the factual showing made at trial. While summary judgment was granted *PAJE* on the basis of uncontradicted affidavits describing the community's crime problem, the district court in *New Jersey Citizens Action* found after trial that "there was *absolutely no correlation* between the existence of canvassing ordinances in the defendant municipalities and the incidence of crime there." *Id.* at 1257 (emphasis in original). In addition, the court found that as a matter of fact, alternatives to canvassing did not exist. *Id.* at 1260–61. Accordingly, the court held that

> [g]iven the record in this case, and cognizant of the interests involved, we believe that the district court was obliged to find that the regulations precluding canvassing before 9:00 p.m. are not precisely tailored to serve the state interests asserted to support them.

*Id.* at 1259. As Judge Weis aptly noted in dissent, however, *New Jersey Citizens Action* really overruled *PAJE* under the guise a factual distinction. He argued that questions such as whether alternatives to canvassing exist and whether solicitation curfews prevent crime are "constitutional facts" which should be taken as established once decided by a competent appellate court.

The Seventh Circuit Court of Appeals similarly adopted the *Frontenac* standard in evaluating time-of-day restrictions on canvassing. *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547 (7th Cir.1986), *aff'd.* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987). In *City of Watseka,* the court struck down a 5:00 p.m.

to 9:00 a.m. curfew on solicitation, holding that

> ... Watseka has failed to offer evidence that its 5 p.m. to 9 p.m. ban on solicitation is narrowly tailored to achieve Watseka's legitimate objectives. Watseka failed to show both the necessary relationship between the ban and its objectives by less restrictive means. Watseka also failed to offer evidence that the statute left open adequate and ample alternative channels of communication.

*Id.* at 1558. *Watseka* was summarily affirmed by the Supreme Court. 107 S.Ct. 919 (1987).

Because the Sixth Circuit has not yet considered the specific issue of solicitation curfews, and in light of the Supreme Court's affirmance of the *Frontenac* standard in *City of Watseka, supra,* the Court will adopt the *Frontenac* test in determining plaintiffs' probability of success on the merits.

### IV.

Ordinance 88–416's time restriction is content neutral and has been applied in an evenhanded way. In addition, it is clear that the ordinance seeks to promote legitimate government interests. As noted earlier, Dearborn claims that permitting large numbers of canvassers to walk about after dark poses a well known risk of crime. *See Martin v. City of Struthers,* 319 U.S. 141, 144, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1943). The right of a municipality to protect its citizens from the risk of crime has long been held to be a legitimate government interest. *Hynes v. Mayor of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). Dearborn also says that the 7:00 p.m. time restriction serves the protect its residents from undue annoyance and invasion of privacy. This is also a legitimate government interest. *Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263 (1980).

More troublesome, however, is whether Dearborn's 7:00 p.m. time restriction leaves open ample alternative means of communication. Door-to-door canvassing is an es-

sential means for poorly financed interests and organizations to disseminate their message to the public. It is one of the few means of communication which are labor rather than capital intensive. Television, radio, and newspaper advertising is beyond the means of most groups. In earlier times, downtown business districts provided political groups inexpensive access to large numbers of people. However, with the increasing predominance of private shopping malls, where the protections of the First Amendment are questionable, *see Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), this may no longer be a viable alternative. In short, door-to-door canvassing is by far the most practical and cost-effective means for grass roots political organizations to operate. *See generally Martin v. City of Struthers,* 319 U.S. at 145–46, 63 S.Ct. at 864–65.

In light of the importance of the door-to-door canvass to contemporary political organizations, the Court must be especially sensitive to the practical realities confronting such operations. Clearly, canvassing operations can only practically perate in the late afternoon and evening. Their most effective hours tend to be between 7:00 p.m. and 9:00 p.m., when most people are home from work and finished with dinner. *See* Affidavit of Richard Blakeney; Affidavit of Linda West. To bar canvassing between these hours would be to cut the heart out of the operation and call the viability of the entire effort into serious question.[1] Accordingly, this Court finds that Dearborn's 7:00 p.m. canvass restriction will not likely leave sufficient alterna-

tive avenues of communication open to plaintiffs.

In addition, the Court is extremely doubtful that the 7:00 p.m. canvass restriction is narrowly tailored to promote Dearborn's interests in crime prevention and the tranquility of its residents. Although it is conceivable that a hearing on the merits will demonstrate otherwise, it seems probable that canvassing between the hours of 7:00 p.m. and 9:00 p.m. will not significantly increase the incidence of burglary or other evening crime in Dearborn. The majority of other courts which have considered the question have held that the impact of canvassing on the crime rate is inadequate to justify prohibitions on canvassing before 9:00 p.m. *See e.g. City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547 (7th Cir.1986); *aff'd.* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987); *New Jersey Citizen Action v. Edison,* 797 F.2d 1250 (3d Cir.1986), *cert. denied* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 186 (1987); *Wisconsin Action Coalition v. City of Kenosha,* 767 F.2d 1248 (7th Cir.1985); *ACORN v. City of Frontenac,* 714 F.2d 813 (8th Cir.1983); *Massachusetts Fair Share, Inc. v. Town of Rockland,* 610 F.Supp. 682 (D.C.Mass.1985); *New York Community Action Network v. Town of Hempstead,* 601 F.Supp. 1066 (E.D.N.Y. 1984); *Connecticut Citizens Action Group v. Town of Southington,* 508 F.Supp. 43 (D.Conn.1980); *West Virginia Citizens Action Group v. Daley,* 324 S.E.2d 713 (W.Va.1984).[2] However, it is important to note that the question of whether a 7:00 p.m. solicitation curfew is narrowly tailored to promote Dearborn's

---

**1.** While it may be theoretically true that these organizations could separate their solicitation activities from their communication activities and thus fall outside the scope of ordinance 88–416, this is not a practical alternative. Plaintiffs simply lack the personnel to efficiently separate these activities. *See* Affidavit of Richard Blakeney; Affidavit of Linda West.

**2.** Dearborn cites four cases where courts have supposedly upheld restrictions on canvassing before 9:00 p.m.: *Pennsylvania Alliance for Jobs and Energy v. Council of the Borough of Munhall,* 743 F.2d 182 (3d Cir.1984); *Westfall v. Board of Commissioners of Clayton County,* 477

F.Supp. 862 (N.D.Ga.1979); *Connecticut Citizens Action Group v. Town of Southington,* 508 F.Supp. 43 (D.Conn.1980), and *May v. Colorado,* 636 P.2d 672 (Colo.1981). However, *Connecticut Citizens* is miscited and actually *struck down* the challenged time ordinance as unconstitutional. *May v. Colorado* is inapposite because it deals with a restriction on commercial speech, which is judged by a different standard than political speech. Thus it appears that the courts which have found solicitation curfews narrowly tailored to promote crime prevention are greatly outnumbered by the courts finding such curfews overbroad.

interest in crime prevention is ultimately a factual inquiry whose resolution must await a trial on the merits. The Court takes note of factual findings in the cited cases only for the purposes of evaluating plaintiffs' likelihood of success on the merits.

It is also probable that other, less restrictive means will adequately protect Dearborn's interest in crime prevention and tranquility. The monitoring provisions of Ordinance 88–416 would seem sufficient to address fears of crime by canvassers. Similarly, homeowners can protect their tranquility through the use of a simple and inexpensive "No Solicitors" sign. The use of a blanket prohibition on canvassing after 7:00 p.m. appears too broad to survive constitutional scrutiny.

## V.

Plaintiffs have demonstrated a substantial likelihood of success on the merits, the threat of irreparable injury, the preponderance of hardship, and the promotion of the public interest. Accordingly, plaintiffs' motion for a preliminary injunction will be granted. An appropriate order is to be submitted.